James C. GREEN et al.

v.

S. Mason CARBAUGH, etc., et al.

Civ. A. No. 78–0768–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 29, 1978.

Robert F. Brooks, G. H. Gromel, Jr., Hunton & Williams, Richmond, Va., for plaintiff.

John B. Purcell, Jr., Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM AND ORDER

WARRINER, District Judge.

On 26 October plaintiff filed a motion pursuant to 42 U.S.C. § 1988 for counsel fees and costs in this action. The parties have filed briefs in support and in opposition on the assumption that § 1988 is applicable to the action *sub judice*.

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, was enacted in reaction to *Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 420, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) and its purpose was to encourage plaintiffs to file suits to vindicate the public interest in such things as racial equality and other such matters in which the primary beneficiary is the public in general. Cf. *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 401–2, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

The language of the Act sweeps far broader than even this extensive purpose. The Civil Rights Acts, especially 42 U.S.C. § 1983, which formed the basis for awarding counsel fees have been extended by the Courts to such an extent that one who disagrees with the ruling of a State administrative officer and who is damaged thereby may arguably state a claim under § 1983. If it be found that the administrative officer failed to give due consideration to certain proffered evidence, say, or that

he failed to observe specified time limits, or that he exceeded his authority in some particular, then a "due process" case under § 1983 may exist. See, e. g. *Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1974).

State administrative officers make, the Court supposes, hundreds of decisions each day which affect the economic well-being of citizens with pending applications and the like. Since State administrators (like federal judges) are human, they will inevitably err from time to time. Without regard to any disability which a plaintiff may or may not be suffering and without regard to any degree of good faith on the part of the administrator, it is not unlikely, under the decisions, that such error will be deemed to be of constitutional proportions as a denial of "due process."

█ In this case there is no claim or evidence that plaintiffs suffer under any disability that should make them especially favored by Congress. They are white males of unknown age. They own, from all appearances, a successful tobacco warehouse in the heart of the tobacco growing area of Virginia. One is the Lt. Governor of the State of North Carolina. The other is a doctor. They were able to obtain the services of the largest and one of the most prominent law firms in the Commonwealth. More importantly, while there is some finding of public interest in avoiding confusion among tobacco farmers as to where they might market their tobacco, the overriding and all pervading purpose of the litigation was the personal financial interest of the plaintiffs. They did not want their tobacco market closed during the first two weeks of the selling season. They were successful in this action in that regard and thus presumably suffered no financial loss in the operation of their warehouse.

By contrast, the defendant Carbaugh's only interest in the subject matter of this litigation was the public interest. The ruling which he made which denied plaintiffs due process was not made for personal gain or for any other personal benefit to defendant. He had determined that plaintiffs owned the Jimmy Green Warehouse in Halifax County, Virginia, and that the management of the warehouse had engaged in illegal activities which had resulted in loss to persons dealing with the warehouse. Secretary Carbaugh apparently wanted to see to it that the plaintiff owners took steps to avoid repetition of such mismanagement and of such illegality. Had the plaintiffs taken effective steps on their own such action by the Secretary would not have been deemed necessary. In any event, in addition to requiring appropriate action by the owners to straighten out the management problems so that the general public could be benefited, the Secretary directed that the license would not issue until after the first two weeks of the selling season. This latter directive was intended to punish the owners for their past dereliction. This Court has interpreted the Virginia statute as not permitting such punishment and has concluded that the withholding of the license for two weeks was a denial of property without due process.

Thus, we have on the one hand a public servant attempting to protect the interest of tobacco farmers and on the other hand we have absentee owners of the tobacco warehouse attempting to protect their bank accounts. Did Congress intend in enacting the Civil Rights Attorney's Fees Awards Act of 1976 to encourage the latter at the expense of the former? It is true that the interest of the general public is vindicated whenever justice is done, but one would have to hunt hard for any other interest to the general public that was served in this action. Even the minor showing of public interest necessary for the issuance of a temporary restraining order was found by the trial court to be "only temporary." It found that "the farmers would not be out of the market," even if he did not grant the restraining order. Tr. p. 9.

We have a case, that apparently meets all of the language set forth in 42 U.S.C. § 1988 but which seems to meet none of its spirit. We have a case which, if decided in plaintiffs' favor, may make the administrative decisions of State governments so expensive if rendered against an applicant

that the hard decisions would almost always go in favor of the applicant. In other words, decisions would always have to be made with an eye to either the public treasury or the official's own bank account.

The questions raised in this memorandum were not addressed by the parties in their briefs. As noted, all concluded that § 1988 was applicable and the argument was whether "special circumstances" created an exception in this case. The Court is not certain that § 1988 is applicable at all. Accordingly, the Court requests defendant to file a brief on this question within ten days of the entry hereof. If defendant concedes the applicability plaintiff, of course, need not reply. If plaintiff contests the applicability, then plaintiff shall file his brief in response within ten days thereafter. Defendants' rebuttal brief shall be filed within three days thereafter.

And it is so ORDERED.