Willie E. YOUNG

v.

Dr. J. B. KENLEY et al.

Civ. A. No. 78–0085–R.

United States District Court,
E. D. Virginia,
Richmond Division.

March 1, 1979.

Charles M. L. Mangum, Lynchburg, Va., for plaintiff.

R. Leonard Vance, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM

**WARRINER, District Judge.**

This case presents a difficult problem in the interpretation and application of the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, and the attorney's fees award provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). Each of these statutes provides that the Court, in its discretion, may allow the prevailing party reasonable attorney's fees as part of the costs in an action brought, as this one was, under either Title VII or under 42 U.S.C. § 1983. The legislative history of the 1976 Act makes it clear that "[i]t is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act." Senate Rep. No. 74–1011, 1976 U.S.Code Cong. & Admin.News, p. 5912.

Plaintiff Willie E. Young filed this suit on 25 January 1978, alleging that she had been denied promotion in the Virginia State Department of Health on account of her race. Plaintiff's complaint was totally inadequate to state a claim on which relief could be granted, and a motion to dismiss was granted by the Court on 23 March 1978. Plaintiff was granted leave to file an amended complaint, which she did on 11 April 1978. This complaint, too, was inadequate to support jurisdiction over plaintiff's Title VII claim and, furthermore, did not allege a Section 1983 claim within the applicable statute of limitations. Accordingly, plaintiff's amended complaint was dismissed on 16 June 1978, though again the Court granted leave for plaintiff to amend her complaint to show Title VII jurisdiction and to allege a violation of § 1983 which was shown to have occurred within the applicable period of limitations. On 3 July 1978 plaintiff filed an affidavit which set forth the basis for Title VII jurisdiction.

In response to yet another motion by defendants, on 19 October 1978 the Court once again dismissed plaintiff's complaint. This time the Court gave plaintiff explicit directions for pleading her Title VII action against the appropriate defendant, and also indicated to plaintiff what facts might properly be pleaded to assert a violation of her rights under § 1983 within the applicable period of limitation. A pleading in response to this order was filed by plaintiff on 30 October 1978, four days after the time granted by the Court for the filing of such a pleading had expired and only three days before the date set for trial.

On 10 November 1978 the matter came on for trial on the merits and the plaintiff adduced her evidence and rested. The matter was continued to a later date for the hearing of defendant's evidence. Before that date arrived, the parties agreed to a settlement which is more fully described below. Now the matter is before the Court on plaintiff's counsel's motion for attorney's fees.

Plaintiff's claim, as finally presented by the proof at trial, rested upon the following circumstances. In 1956 the plaintiff graduated from Meharry Medical College School of Nursing in Nashville, Tennessee, a predominately black nursing school. When plaintiff graduated from Meharry, the baccalaureate program in nursing at Meharry was accredited by the National League for Nursing. However, Meharry was not accredited by the League in the field of public health nursing.

In 1973 plaintiff was hired as a Public Health Nurse Grade Level "A" (PHN-A) by the Virginia Department of Health. Plaintiff, claiming racial discrimination, success-

fully sought promotion to PHN-B without being required to take the promotion examination for that position. However, it was noted at that time that plaintiff would not be qualified for promotion to PHN-C because she had not been graduated from a nursing school accredited in public health nursing. Until February 1977 the specification for the job of PHN-C in the Virginia Department of Health included a requirement of a degree from a nursing school accredited in public health nursing.

This requirement, however, was out of date. In 1964 the National League for Nursing had changed its accreditation so that it no longer gave separate accreditation for both general nursing and public health nursing. After 1964, no school was accredited for nursing unless it was also accredited for public health nursing. Thirteen years after the fact, the Virginia Department of Health changed its job specifications for PHN-C to eliminate the requirement of accreditation in public health nursing. The plaintiff was never specifically told prior to the filing of this law suit that the job specification for PHN-C had changed. However, plaintiff did have ready access to the personnel manual in which the change was published. Prior to filing her law suit the plaintiff did not make a formal application for promotion to PHN-C because she felt that such an application would be a futile exercise. The law suit was filed, as previously noted, on 25 January 1978. On 23 June 1978 the plaintiff was specifically informed that the job specifications had been changed and that she was eligible for promotion to PHN-C, and she was invited to apply for that promotion. After some delay plaintiff did apply for this promotion, and successfully passed the promotional test before her case went to trial.

At trial, plaintiff's claims had been reduced to two. Her first claim was that she had been barred from promotion to PHN-C by the requirement that a person seeking to be promoted to level C be a graduate of a nursing school accredited in public health nursing. Plaintiff claimed that Meharry was not accredited in public health nursing by the white-dominated accrediting agency, the National League for Nursing, because the League discriminated against blacks. Plaintiff further claimed that the defendant Department of Health recognized and gave credence to the League's refusal to accredit Meharry in public health nursing despite the racially discriminatory nature of this refusal, either purposefully to deny blacks promotional opportunities or despite its adverse impact on blacks, in violation of § 1983 and Title VII.

Plaintiff's second claim was that the individual defendants, cognizant of the earlier information given plaintiff that she was ineligible, and aware of the fact that the new regulation removed plaintiff's disability and made her eligible for promotion, nevertheless because of her race, deliberately, willfully and maliciously failed to inform her of the change in the regulations, having a duty to so inform her.

In settlement of this action plaintiff received a promotion to PHN-C, a payment $900.00 and the reclassification of her former PHN-B position with the Department of Health in Bedford, Virginia, as a PHN-C position. Without a reclassification of her job, plaintiff would have had to leave Bedford and move elsewhere in Virginia where a Level C position was available. On the basis of this settlement, plaintiff's counsel now seeks an award of attorney's fees.

■ It is well settled that a plaintiff whose suit is ended by settlement may still be considered a "prevailing party" within the meaning of §§ 1988 and 2000e–5(k). The leading case on this question is *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978). *Nadeau* establishes two tests, one factual and the other legal, which plaintiff must pass in order to be considered a prevailing party. The Court concludes that although Mrs. Young can fulfill the factual test for prevailing, she cannot meet the legal test and her motion for an award of attorney's fees must be denied.

The first *Nadeau* test is a factual test: did the plaintiff's law suit contribute to the achievement of her relief, or was it com-

pletely superfluous to the benefits which she received? In the present case, the record shows that the policy which plaintiff claimed barred her from promotion had been revised to remove the bar to her advancement well prior to the institution of this suit. The revision was openly promulgated through defendant's personnel manual and plaintiff had constructive knowledge of the change, even if she had no actual knowledge of it.

On the basis of the evidence and the record in this case, the Court finds that had plaintiff, at any time during the period from February 1977, when the revision was drawn, to January 1978, when this suit was filed, applied for the promotion she sought, she would have received it. Also, had her counsel, after he was retained, attempted in the slightest to obtain appropriate relief for his client without suit he would have succeeded. The most elementary research would have revealed the job requirements in the personnel manual. Plaintiff and her counsel would have seen that the relief sought was already won and that a suit to obtain such relief would be a waste of time and money for all involved. In short, this action is frivolous. This is itself relevant to the Court's attorney's fees decision, as will be seen more fully below.

However, the Court cannot say plaintiff's law suit was completely superfluous in bringing about the benefits she received. Without her suit, plaintiff would have received neither the award of back pay nor the reclassification of her job in Bedford to permit her to accept a promotion and still remain in Bedford. The Court does, however, regard plaintiff's law suit as completely superfluous to her central relief—a promotion. Nevertheless, plaintiff must be held to have prevailed under the factual tests in *Nadeau*, because of the monetary settlement and the reclassification of her job.

Thus, the Court must turn to the second test found in *Nadeau*. This test is expressed as follows in *Nadeau* :

Even if plaintiffs can establish that their suit was causally related to the defend-

ant's actions which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. It it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interest, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense. [581 F.2d at 281]

The Court has heard the evidence presented by the plaintiff in this case, and concludes that the actions the defendants have taken in settlement simply could not have been required by law had this case gone forward to judgment.

The Court has had "sufficient exposure to the facts and law of this case" [581 F.2d at 281] to determine that this case clearly has not been proved. There is absolutely no evidence tending to show that the National League for Nursing failed to accredit Meharry in public health nursing because Meharry was a predominately black school. Plaintiff asks the Court to infer racial discrimination on the part of the League because the League was white-dominated. The Court will not indulge in such a race-based inference, which smacks of a *per se* rule that white-dominated agencies presumptively deal unfairly with black persons and institutions.

Further, although it was proved that the Department of Health used the accrediting service of the League in its regulations, it was not proved that this was done for the purpose of discriminating against blacks. Nor was it proved that the practice had a disproportionate impact upon blacks. There is, in fact, no evidence of differential impact at all.

Nor has plaintiff proved that the individual defendants had a duty to inform her of the change in the regulation and failed to do so because she is black. The record is entirely devoid of any support for that contention or any evidence upon which the Court could base a finding that plaintiff's rights under § 1983 had been violated by the individual defendants in this case in that manner.

The Court notes that at the time settlement was reached between plaintiff and defendants, plaintiff had introduced all of her evidence and had failed to prove her case. In ruling on defendants' motion to strike at the close of plaintiff's evidence, the Court denied the motion and required defendants to prepare to present their evidence without prejudice to their right to renew the motion at the close of all the evidence. Further reflection and review of transcript in this case convinces the Court that defendants' motion should have been granted. For all the foregoing the Court concludes that defendants acted gratuitously in settling with the plaintiff.

■ Thus, although plaintiff would not have received an award of back and the redesignation of her present position as a PHN-C position without the leverage of this suit, she was not legally entitled to either form of relief nor to any other relief. It is apparent to the Court that this lagniappe was a consequence of defendants' desire to rectify their failure specifically and personally to advise plaintiff of the change in their regulations—advice they had no legal obligation to give but which would not have been inappropriate under the circumstances. Accordingly, the rule in *Nadeau* would preclude the award of attorney's fees in this action.

In addition, the Court bases its determination to deny plaintiff's motion for attorney's fees on its finding that plaintiff's law suit was frivolous. The Court's concern is very similar to that expressed by the court in *Naprstek v. City of Norwich*, 433 F.Supp. 1369 (N.D.N.Y.1977). Plaintiffs in that case attacked an "antiquated, poorly-drafted, rarely-enforced juvenile curfew ordinance." The ordinance was found void for vagueness and plaintiffs' attorneys sought fees under § 1988. The district court denied the award of attorney's fees because it found that the law suit was frivolous and unnecessary however successful it had been. The Court said:

> Nor do we think Congress intended to award attorneys for burdening federal courts with unnecessary litigation when they have not even attempted to remedy their clients' grievances by talking out their differences with duly constituted executive and legislative authorities at the local level. [433 F.Supp. 1371]

This consideration relates not to the question of whether Mrs. Young is a prevailing party in this law suit, but rather to the question of whether Congress intended that attorney's fees be awarded under § 1988 or Title VII in such an action as this one—an action which need never have been filed. See *Green v. Carbaugh*, 460 F.Supp. 1193 (E.D.Va.1978). Accordingly, for this reason also the Court concludes that an award of attorney's fees is not justified.

■ Finally plaintiff complains that defendants' failure to prepare for trial at the time set caused plaintiff and her counsel to make an extra trip from Lynchburg to Richmond. This point is well taken. Defendants shall be required to reimburse counsel for plaintiff his cost, expenses and time for this unnecessary excursion. Plaintiff's attorneys, Charles M. L. Mangum and Leonard Brown, Jr., each spent four hours in Court on 2 November 1978 and approximately four additional hours in travel. Defendants will be required to reimburse Mr. Mangum at a rate of $50.00 per hour, and Mr. Brown at a rate of $30.00 per hour for the eight hours thus spent. In addition, defendants shall be required to reimburse plaintiff's counsel for their mileage to Richmond, $42.50, and for tolls and parking paid, $2.50.

An appropriate order shall issue.