UNITED HANDICAPPED FEDERATION, a Minnesota Non-Profit Corporation, National Paraplegia Foundation, North Country Chapter, a Minnesota Non-Profit Corporation, Michael J. Bjerkesett, Richard Van Wagner, Stephen Wrbanich, Claudia Fuglie, Carolyn Emerson, and Ronel Moore, Plaintiffs,

v.

Camille D. ANDRE, Individually and in his official capacity as Chief Administrator of Metropolitan Transit Commission, Douglas Kelm, Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, Leonard W. Levine, Individually and his official capacity as Commissioner of the Metropolitan Transit Commission, Bruce G. Nawrocki, Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, Karl Neid, Jr., Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, Alice W. Rainville, Individually and in her official capacity as Commissioner of the Metropolitan Transit Commission, Ruth E. Franklin, Individually and in her official capacity as Commissioner of the Metropolitan Transit Commission, Gayle M. Kincannon, Individually and in her official capacity as Commissioner of the Metropolitan Transit Commission, Frank W. Snowden, Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, William O. Cooley, Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, Edward Hjermstad, Individually, Walter Saxum, Individually, Loring M. Staples, Jr., Individually, Leonard Thiel, Individually, Richard S. Page, Individually and in his official capacity as the Administrator of the Urban Mass Transportation Administration, Robert E. Patricelli, Individually, Brock Adams, Individually and in his official capacity as the Secretary of the United States Department of Transportation, William Coleman, Jr., Individually, Joseph A. Califano, Individually and in his official capacity as the Secretary of the Department of Health, Education and Welfare, and AM General Corporation, Defendants.

No. 4–75 Civ. 627.

United States District Court,
D. Minnesota,
Fourth Division.

June 11, 1980.

See also, D.C., 409 F.Supp. 1297 and 8th Cir., 558 F.2d 413.

William H. Mahlum and Marilyn B. Knudsen, St. Paul, Minn., for plaintiffs.

Popham, Haik, Schnobrich, Kaufman & Doty, Ltd. by David S. Doty, and James B. Steilen, Minneapolis, Minn., for defendants Metropolitan Transit Commission members.

Andrew W. Danielson, U. S. Atty. by John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., Robert W. Batchelder, Atty. Advisor, Urban Mass Transp. Administration, Washington, D. C., for defendants Brock Adams, Joseph A. Califano, and Richard S. Page.

## MEMORANDUM ORDER

ALSOP, District Judge.

This matter comes before the court on the petition of the plaintiffs and the counter-petition of the state defendants for attorney's fees pursuant to 42 U.S.C. § 1988 and 29 U.S.C. § 794a(b). The federal defendants have moved for a final order of dismissal or summary judgment. The petitions and motions have been extensively briefed, and oral argument has been heard. The court additionally has reviewed the numerous affidavits and depositions which were submitted on this issue.

At the hearing on the motions, the court reserved ruling on the admissibility of defendants' Exhibits A and B. Plaintiffs objected to the admission of Exhibit A on the grounds that defendants did not provide it to the court prior to the hearing date. Plaintiffs candidly admit that they had received and reviewed the exhibit some considerable time prior to the hearing. Plaintiffs' objection to defendants' Exhibit A is overruled, and the exhibit is received.

Plaintiffs' objection to defendants' Exhibit B is essentially the same as the objection to Exhibit A, except plaintiffs claim not to have had an opportunity to inspect and review Exhibit B in its entirety prior to the hearing. Plaintiffs have subsequently been afforded this opportunity and have made their reactions to the exhibit known to the court. Plaintiffs' objection to defendants' Exhibit B is overruled, and the exhibit is received.

Although plaintiffs initially brought their petition for attorney's fees under 42 U.S.C. § 1988, they have subsequently asserted the same claim under 29 U.S.C. § 794a(b). Section 794a(b) was added to the Rehabilitation Act of 1973 on November 6, 1978. It provides:

> In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988 provides in part:

> In any action or proceeding to enforce a provision of sections . . . 1983, 1985 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The federal defendants have moved the court for a final dismissal order or for summary judgment. On August 31, 1978, pursuant to the stipulation of the plaintiffs and the federal defendants, this court entered an order dismissing the action in its entirety as against the federal defendants in their individual capacities and dismissing the action, except the issue of attorney's fees and costs, with respect to the federal defendants in their official capacities.

Plaintiffs' petition and memoranda make no reference to any claim against the federal defendants in their official capacities for attorney's fees and costs; however, at oral argument, plaintiffs' counsel asserted this claim on the grounds that this litigation, along with other suits across the country, was the impetus for the Transbus mandate of May 19, 1977 and was the true life-giver to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

The federal defendants argue: (1) plaintiffs have not prevailed against the federal defendants on any aspect of their action; (2) section 1988 does not authorize an award of attorney's fees against the federal defendants in a suit brought under any of the statutes or constitutional provisions relied on by plaintiffs; (3) the amount claimed by plaintiffs is excessive; and (4) the sovereign immunity protection of the United States was not waived by 29 U.S.C. § 794a(b).

■ Under either 42 U.S.C. § 1988 or 29 U.S.C. § 794a(b), the plaintiffs must be the prevailing party to be entitled to an award of attorney's fees. Assuming *arguendo* that all the other potential impediments to the plaintiffs' recovery of attorney's fees from the federal defendants were eliminated, the court finds that on the basis of the record before it in this action the plaintiffs are not the prevailing party with respect to the federal defendants. There is no evidence in the record to support a finding that the instant lawsuit had any effect, direct or indirect, on the actions of the federal government with respect to transportation services for the handicapped. Nor does it appear that plaintiffs achieved in any fashion any of the relief they sought in this action as against the federal defendants.

On this basis alone, the court is compelled to deny plaintiffs' petition as against the federal defendants and to grant the motion of the federal defendants for summary judgment in their favor. The court reaches this conclusion without addressing the merits of any of the other issues raised with respect to the propriety of an award of attorney's fees as against these defendants.

The state defendants oppose plaintiffs' petition for attorney's fees on the grounds that: (1) plaintiffs are not a prevailing party within the meaning of § 1988 or § 794a(b); (2) Section 1988 does not apply because plaintiffs have not prevailed on any claim for which attorney's fees are autho-

rized; (3) manifest injustice would result from any award of attorney's fees as against MTC commissioners who resigned prior to the settlement of this action; (4) Section 794a(b) is not applicable; (5) attorney's fees cannot be awarded against these defendants in their individual capacities; (6) attorney's fees cannot be recovered for non-legal or unnecessary services; and (7) plaintiffs cannot recover attorney's fees for legal services rendered in connection with issues on which they did not prevail. The state defendants additionally counter-petition the court to recover their own attorney's fees from the plaintiffs on the grounds that they are the prevailing party and that plaintiffs' action was legally frivolous.

As noted above, in order to recover attorney's fees under either § 1988 or § 794a(b), plaintiffs must be the prevailing party. Because of the tortuous legal and factual procedural history of this action, the court finds it necessary to review these proceedings in some detail.

The Urban Mass Transportation Act of 1964 contains § 16, 49 U.S.C. § 1612, which declares as a national policy that "special efforts shall be made in the planning and design of mass transportation facilities and services so that the availability to elderly and handicapped persons of mass transportation which they can effectively utilize will be assured."

In 1973, Congress enacted the Rehabilitation Act of 1973 which included § 504, 29 U.S.C. § 794, which provided that "No otherwise qualified handicapped individual in the United States, . . . shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

In 1973, the Minnesota legislature first authorized funds for the Metropolitan Transit Commission (MTC) to study the implementation of transportation services for the handicapped. In that same year, the Metropolitan Transit Committee for the Disabled (MTCD) was organized to assist the MTC in the development of transportation services for the handicapped.

On June 5, 1974, the MTC approved a demand responsive demonstration project to provide transportation for the handicapped; this became known as Project Mobility (PM). On June 12, 1974, the Urban Mass Transportation Administration (UMTA) approved the purchase of ten Project Mobility buses. At the same time, UMTA also approved the MTC's proposed purchase of 179 standard-size, non-accessible transit buses.

In November 1974, the MTC completed a survey on the transportation needs of handicapped and disabled persons in the metropolitan area. On January 15, 1975, the MTC adopted a statement of policy regarding transportation services for handicapped and disabled persons and approved the proposed Project Mobility demonstration project.

In August of 1975, the authorized acquisition of standard-size, non-accessible transit buses was increased to 309. These buses were being manufactured for the MTC pursuant to a contract between the MTC and AM General Corporation.

Through 1975, the MTC continued to develop the format of Project Mobility. On August 8, 1975, MTC staff was authorized to solicit bids for ten PM buses. On November 19, 1975, MTC staff was authorized to negotiate a contract with Arrow Coach for the purchase of the ten buses. On December 10, 1975, the MTC awarded the contract to Arrow Coach.

On December 8, 1975, the instant lawsuit was filed by individual and organized handicapped persons against the MTC, various federal officials, and AM General Corporation. The complaint alleged violations of the Urban Mass Transit Act, 49 U.S.C. §§ 1602(d) and 1612; the Rehabilitation Act, 29 U.S.C. § 794; the Federal-Aid Highway Amendments, 23 U.S.C. § 101, *et seq.*; the 1975 Department of Transportation Appropriations Act; the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985(3); and the United States and Minnesota Constitutions. The relief sought was an injunction against the

MTC's imminent acquisition of some 338 new buses which were not accessible to handicapped persons; declaratory judgment defining plaintiffs' rights and rendering the MTC's bus contract with AM General Corporation void; an injunction mandating the defendants to develop a plan for public transportation for the handicapped and prohibiting the defendants from further development of unaccessible transportation until a plan for equal access was implemented; an injunction prohibiting the exclusion of the handicapped from the benefits of MTC transportation services obtained with federal financial assistance; actual and punitive damages; and attorney's fees and costs.

On February 24, 1976, this court denied plaintiffs' motion for a preliminary injunction restraining the defendants from proceeding further with the MTC's acquisition of buses which were not equally accessible to the plaintiffs.

Because of technical problems with vehicle specifications, on January 21, 1976, the MTC rescinded the authorization to purchase the Project Mobility buses from Arrow Coach. On March 3, 1976, the MTC approved revised vehicle specifications.

On March 10, 1976, this court entered summary judgment for the defendants as to the causes of action in sections A and B, paragraphs 67–86 of the complaint and dismissed for lack of subject matter jurisdiction the causes of action in sections C and D, paragraphs 87–90 of the complaint. The court found that the "special efforts" requirement of the Urban Mass Transit Act was being complied with; the Federal-Aid Highway Amendments were inapplicable to the projects at issue; the policy guidelines of the Rehabilitation Act were not being violated; the Department of Transportation Appropriations Act was inapplicable to the projects at issue; the civil rights claims failed as a matter of law with the failure of the statutory claims; and there was no violation of plaintiffs' equal protection under the rational basis analysis. The court dismissed the remaining state statutory and constitutional claims for lack of subject matter jurisdiction.

On April 9, 1976, the MTC awarded the Project Mobility bus contract to Grumman-Allied. On June 21, 1976, UMTA approved the boundaries of the Project Mobility service area and selected Applied Research Integration (ARI) as the consultant for the evaluation program. The Commission also approved the purchase of two additional accessible vehicles. On November 27, 1976, Project Mobility service was initiated.

Through the remainder of 1976 and until November 17, 1977, ARI submitted periodic reports and recommendations for future handicapped services planning.

On June 21, 1977, the Court of Appeals for the Eighth Circuit vacated this court's order of March 10, 1976, and remanded the case for further proceedings, directing this court, upon receiving further evidence, to reappraise defendants' compliance with the statutes, regulations, and guidelines and fashion whatever equitable relief it deemed necessary. After specifically finding that the plaintiffs had standing to bring a private claim for relief and that § 504 of the Rehabilitation Act did create an affirmative duty on the part of the defendants, the Eighth Circuit stated that if it were not for the subsequent promulgation of administrative guidelines and regulations, it would agree with this court's result. The circuit court said that the defendants "now have" the burden to take affirmative action to conform to the regulations and guidelines.

On July 1, 1977, four members of the nine-member MTC were replaced by the Metropolitan Council.

On November 18, 1977, this court held a status conference to discuss the posture of the case on remand. Plaintiffs were granted leave to file an amended complaint, and a schedule for motions and briefing was established. On December 9, 1977, the federal defendants moved the court for summary judgment with respect to pre-regulation project approvals. On December 13, 1977, AM General Corporation moved for summary judgment, and the state defendants moved for dismissal of all causes of action relating to events occurring prior to May 31, 1976. A hearing date of January 13, 1978 was set for these motions.

On December 21, 1977, plaintiffs filed an amended complaint which sought additional relief as follows: declaratory judgment that the April 30, 1976 UMTA regulations were unlawful and void; declaratory judgment prohibiting HEW from issuing guidelines which do not protect the handicapped and prohibiting UMTA and the Department of Transportation (DOT) from funding any program which did not insure equal provisions for the handicapped; and an injunction prohibiting UMTA, DOT, and HEW from approving or funding any program which would not permit equal and equivalent access.

On November 17, 1977, ARI submitted its final report and recommendation on Project Mobility. It recommended expanding the Project Mobility service area, billing social or human service agencies whose clients regularly used Project Mobility an amount substantially more than the individual fare, subcontracting with private providers, and developing a comprehensive, long-range plan for the provision of handicapped transportation, including the integration of accessible conventional buses and other paratransit services.

On November 28, 1977, the MTC staff submitted its recommendations. These included expanding the Project Mobility target area boundaries and hours of operation, contracting with social service agencies, subcontracting with the private sector for areas not covered by Project Mobility, retrofitting some full-size buses, and providing inter-city shuttle service.

On December 13, 1977, Commissioner William Cooley presented to the MTC a resolution, drafted by William Mahlum, counsel for plaintiffs, which essentially called for transportation service to the handicapped at increasing percentages ultimately reaching 100% on February 1, 1981, expansion of Project Mobility, and commission review and planning to meet the levels of service at the prescribed dates. It was emphasized that the resolution anticipated using a multi-model approach to provide the service, including retrofitting regular buses.

Present at the December 13, 1977 MTC meeting were a large number of handicapped persons who uniformly supported the resolution. Mr. Mahlum informed the MTC that if the resolution were adopted and if all the obligations were met, he would probably withdraw this lawsuit. The Cooley resolution was tabled. Shortly thereafter, Commissioner Gayle Kincannon and Donald Hubert of the MTC staff had a meeting with Arnie Entzel of the Transit Union, Richard Brown of the Minnesota Department of Transportation, William Mahlum, State Senator David Schaaf, and State Representative Peter Petrafeso. At the meeting, the Cooley Resolution was reviewed point by point. Senator Schaaf and Representative Petrafeso pledged their commitment to try to secure needed funding from the legislature. Mr. Mahlum said he would consider dropping the lawsuit if the resolution were forthcoming and if a good faith effort were made to comply with the time frame.

On December 21, 1977, Commissioner Kincannon presented Resolution 77–115 to the MTC. This resolution committed the MTC to provide "effective transportation service" to the handicapped according to a time scale, reaching 100% availability as of February 1, 1981. The resolution did not specify the method of delivery of the service. Resolution 77–115 was passed by the MTC.

The depositions of Commissioners Franklin, Neid, Kelm, Snowden, Nawrocki, Rainville, Kincannon, and Cooley indicate that although the MTC members were generally aware of the instant lawsuit, it was little more than a single factor which a few of them considered in voting for Resolution 77–115. It appears that the commissioners were anxious that the MTC develop a plan for continuing its commitment to providing transportation services to the handicapped. The record before the court indicates that this lawsuit had a minor, if not entirely negligible, effect on the MTC's action in passing Resolution 77–115.

On February 8, 1978, the motions of the defendants for summary judgment were ar-

gued. On March 6, 1978, in a memorandum opinion, this court granted summary judgment in favor of the defendant AM General Corporation on all causes of action and granted summary judgment in favor of the remaining defendants with respect to MTC mass transportation projects approved by UMTA prior to April 27, 1976. The court specifically found that the new HEW, UMTA, or FHWA regulations or guidelines had no effect upon its prior ruling with respect to MTC projects approved by UMTA prior to April 27, 1976.

On May 3, 1978, plaintiffs and the state defendants executed a Stipulation of Settlement, which stated that in consideration for the terms, dates and conditions set forth in MTC Resolution 77-115, plaintiffs agreed to dismiss the MTC defendants from this lawsuit. The Stipulation of Settlement left unresolved only plaintiffs' claim for attorney's fees and costs. Pursuant to the Stipulation, this court entered an order on May 10, 1978 dismissing all claims of the plaintiffs as against the state defendants, save and except the question of plaintiffs' attorney's fees and costs.

The crux of plaintiffs' argument for attorney's fees is that this lawsuit was the motivating factor or catalyst in causing the state defendants to make a commitment to the provision of transportation services to the handicapped in accordance with the United States Constitution and the requirements of the federal statutes and regulations.

The settlement of a lawsuit under the Civil Rights Act does not preclude the plaintiff from asserting a claim for an award of attorney's fees under 42 U.S.C. § 1988. *International Society for Krishna Consciousness, Inc. v. Andersen*, 569 F.2d 1027 (8th Cir. 1978); *Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977); *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970); *Hartmann v. Gaffney*, 446 F.Supp. 809 (D.Minn.1977). Furthermore, there is no requirement that the court must have ruled, or must find that it would have ruled, in plaintiff's favor on the constitutional issues presented. *Gagne v.*

*Maher*, 594 F.2d 336 (2d Cir. 1979); *Brown v. Bathke*, 588 F.2d 634 (8th Cir. 1978); *Kimbrough v. Arkansas Activities Association*, 574 F.2d 423 (8th Cir. 1978). Any fees awarded by the court may be proportionate to the extent to which the ultimate result is attributable to the plaintiff's actions and may be limited to services rendered on those issues on which the plaintiff prevailed. *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978); *Brown v. Bathke, supra; M. C. I. Concord Advisory Board v. Hall*, 457 F.Supp. 911 (D.Mass.1978). Finally, the Eleventh Amendment does not bar a fee award against the state defendants in their official capacities in this circumstance. *Hutto v. Finney*, 437 U.S. 678 (1978); *Gagne v. Maher, supra, M. C. I. Concord Advisory Board v. Hall, supra.*

Essential to an award of attorney's fees to plaintiffs is a finding of the court that they were, through the Stipulation of Settlement, the prevailing party in this action. The Court of Appeals for the First Circuit has recently addressed itself to the proper analysis to be employed on a motion for attorney's fees in a case where no final judicial determination of the constitutional claim has been made and where the role of the lawsuit as a catalyst in motivating the defendant's behavior is hotly contested. In *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978), that court stated that "the key issue is the provocative role of the plaintiff's lawsuit, not the motivations of the defendant." *Id.* at 280.

The First Circuit determined that there are two critical questions which control whether a plaintiff is the prevailing party with respect to issues resolved by a consent decree. The first is a question of fact.

. . . (N)o award is required if the court determines that plaintiff's suit was completely superfluous in achieving the improvements undertaken by defendants on plaintiff's behalf. . . . (I)f the plaintiffs' suit and their attorney's efforts were a necessary and important factor in achieving the improvements, although they could not have accomplished as much as they did without the construc-

tive leadership of [the defendants], plaintiffs should be held to have overcome their first hurdle toward their goal of receiving *some* attorney's fees. *Id.* at 281 (emphasis in original).

The court noted that the chronological sequence of events is an important, although not definitive, factor in determining whether the defendant reasonably can be inferred to have guided its actions in response to the lawsuit.

The second question to be answered is one of law. If plaintiffs can establish that their suit was causally related to the defendants' actions, the court then must determine "whether if plaintiffs had continued to press their claims under traditional constitutional theory, their action could be considered 'frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.' " *Id.* at 281. If the court reaches that conclusion, then it must deny the plaintiffs' motion regardless of the impact of the lawsuit on the defendants' actions.

■ The *Nadeau* analysis was utilized by the district court in *M. C. I. Concord Advisory Board v. Hall, supra,* and appears to represent a fair and proper application of the law as it has developed in the area of attorney's fees under § 1988. As applied to the facts in the instant case, both questions presented must be answered adversely to the plaintiffs.

Although this court is not prepared to find that plaintiffs' suit was "completely superfluous" in achieving the MTC's adoption of Resolution 77–115, it cannot find that the suit and plaintiffs' attorney's efforts were a necessary and important factor. On the basis of the record before the court, it appears that the MTC actions were the result of a growing awareness and concern with providing transportation services for the handicapped which was only minimally and indirectly influenced by this lawsuit.

Perhaps more importantly, the court is unable to determine how the plaintiffs can be considered as the prevailing party in any respect in the legal sense. At the time the Stipulation of Settlement between the plaintiffs and the state defendants was executed, this court, on remand from the Eighth Circuit, had issued its order of March 6, 1978, granting summary judgment in favor of the defendants with respect to MTC mass transportation projects approved by UMTA prior to April 27, 1976. As far as this court has ever been able to determine from the complaint on file herein and from the exhibits, affidavits, depositions, and memoranda, that summary judgment order disposed of all the claims asserted by the plaintiffs in this action.

This lawsuit was originally initiated in response to the MTC's then pending acquisition of some 338 non-accessible, standard-size transit buses. The thrust of the complaint and the relief sought was to require the MTC either to purchase accessible buses or to retrofit the non-accessible ones. Rather than supporting Project Mobility, the plaintiffs' apparent desire was to compel the MTC to make all regular route buses accessible to the handicapped community.

Given the posture of this action at the date of the Stipulation of Settlement, the court cannot realistically determine any manner in which the plaintiffs could have continued to press their claims without such being considered groundless. In the totality of these circumstances, the court concludes that the plaintiffs herein are not a prevailing party within the meaning of 42 U.S.C. § 1988 or 29 U.S.C. § 794a(b). The court will deny plaintiffs' petition for attorney's fees as against the state defendants on this ground.

■ The court further notes that although 42 U.S.C. § 1988 provides for an award of attorney's fees in a suit against a state official in his official capacity, it does not affect the traditional bad faith requirement with respect to an award against that person acting in his individual capacity. *Hutto v. Finney, supra; M. C. I. Concord Advisory Board v. Hall, supra.* There is no evidence in the record which would support a finding that the state defendants acted with bad faith in their individual capacities.

■ The state defendants have counter-petitioned the court for an award of their attorney's fees as against the plaintiffs under 42 U.S.C. § 1988. The required showing for an award of attorney's fees to a prevailing defendant under § 1988 is that the action was brought in bad faith or was vexatious, harassing, or frivolous. *Patzkowski v. United States*, 576 F.2d 134 (8th Cir. 1978). The court concludes that although it ruled adversely to the plaintiffs on the merits of their action, the action does not come within that class which merits the awarding of attorney's fees to the defendant.

Upon the foregoing,

IT IS ORDERED That the plaintiffs' petition for attorney's fees as against the federal defendants in their official capacities and as against the state defendants in their individual and official capacities be and hereby is denied in all respects.

IT IS FURTHER ORDERED That the federal defendants' motion for summary judgment be and hereby is granted and the clerk shall enter judgment as follows:

The plaintiffs, and each of them, shall have and recover nothing from the federal defendants, or any of them.

IT IS FINALLY ORDERED That the state defendants' counter-petition for attorney's fees as against the plaintiffs be and hereby is denied in all respects.