Larry NADEAU et al., Plaintiffs, Appellants,

v.

Raymond A. HELGEMOE, Warden, New Hampshire State Prison, et al., Defendants, Appellees.

No. 78–1019.

United States Court of Appeals, First Circuit.

Argued June 6, 1978.

Decided July 28, 1978.

Jeffry A. Schapiro, Manchester, N.H., for plaintiffs, appellants.

James C. Sargent, Jr., Asst. Atty. Gen., Concord, N.H., with whom Thomas D. Rath, Atty. Gen., Concord, N.H., on brief, for defendants, appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

For several years New Hampshire Legal Assistance has been representing the plaintiff class, the inmates held in protective custody at the New Hampshire State Pris-on, in a § 1983 suit alleging that the conditions of confinement imposed on plaintiffs violates various provisions of the Constitution. In December, 1976, the district court concluded that plaintiffs' allegations were supported and awarded them significant injunctive relief, 423 F.Supp. 1250 (D.N.H. 1976). New Hampshire appealed and in August, 1977, we affirmed the district court in part and reversed its decision in part. 561 F.2d 411 (1st Cir. 1977).

Much of the district court's analysis was based on its view that the treatment of prisoners must be in accord with some legitimate penological purpose to meet constitutional requirements. We rejected that standard of review, but were unable to determine with any degree of confidence which of the district court's conclusions and the consequent relief it had ordered was supportable by more traditional Eighth and Fourteenth Amendment analysis. Accordingly we remanded the case to the district court and directed it to scrutinize plaintiffs' conditions of confinement from a less exacting perspective. However, we affirmed that part of the district court's opinion and order concerned with expanding plaintiffs' access to library facilities.

Before trial was resumed, in October of 1977, the parties entered into a consent decree which was subsequently approved by the district court. On the basis of their limited success on appeal and the changes in plaintiffs' conditions of confinement required by the consent decree, plaintiffs' counsel moved for an award of attorney's fees pursuant to 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act of 1976. The district court denied plaintiffs any attorney's fees on the ground that they were not the "prevailing parties" in the litigation. While agreeing that "the consent decree entered into has resulted in considerable improvement for the plaintiff class as compared to the conditions they were subjected to prior to the institution of this suit", the court nevertheless concluded that fees were inappropriate since the improvements reflected, "not only the intensive work and effort of plaintiffs' attorneys, but

also a good faith effort on the part of [Assistant] Attorney [General] Sargent and Warden Perrin to improve conditions at the New Hampshire State Prison." Plaintiffs appeal that denial.

■ For purposes of analysis plaintiffs' request can best be discussed by distinguishing between two separate rationales for an award of attorney's fees.[1] First, plaintiffs argue that the vindication of their rights to increased access to library facilities, affirmed by this court on appeal, requires that they be denoted prevailing parties for that part of this litigation and that at a minimum they should receive an award proportional to their effort on that issue. Second, they argue that the achievements formalized in the consent decree, allegedly due in significant part to their efforts, should also be considered sufficiently "prevailing" to support an attorney fees award. We shall discuss each rationale in turn.

■ The new Attorney's Fees Awards Act makes it clear that only "prevailing parties" may be awarded attorney's fees, but it does not elaborate on the criteria courts should employ in determining when a party has met that standard. The legislative history strongly suggests that a plaintiff who is partially successful in achieving the relief sought may still receive an award. Thus in discussing *pendente lite* awards, the Senate Report states, "Such awards are especially appropriate where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues." Senate Rep. No. 94–1011, 5 U.S.Code Cong. & Admin.News, pp. 5908, 5912 (1976). The relevant case law confirms this principle.[2]

Many courts have awarded fees to plaintiffs who have succeeded in proving class wide discrimination but failed to establish that they had individually suffered injury and were entitled to personal remedies. See *Bolton v. Murray Envelope Corp.,* 553 F.2d 881 (5th Cir. 1977); *Barnett v. W. T. Grant Co.,* 518 F.2d 543 (4th Cir. 1975); *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir. 1970); *Saracini v. Missouri Pac. R. Co.,* 431 F.Supp. 389 (E.D. Ark.1977). Other courts have awarded fees in the reverse situation in which plaintiff was successful on his individual claim but did not prevail on his class wide allegations, *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263 (10th Cir. 1975), or have awarded fees when plaintiff achieved the injunctive relief she sought, but was unsuccessful as to her damage claim, *Rosenfeld v. Southern Pacific Co.,* 519 F.2d 527 (9th Cir. 1975). In *Taylor v. Goodyear Tire and Rubber Co.,* 6 E.P.D. ¶ 8696 (D.C.Ala.1973), plaintiffs were awarded attorney's fees for prevailing on seniority rights and sick pay claims but losing on job classification and back pay issues. The court in *Younger v. Glamorgan Pipe and Foundry Co.,* 418 F.Supp. 743 (W.D.Va.1976), *vacated on other grounds,* 561 F.2d 563 (4th Cir. 1977), awarded fees to plaintiffs despite the fact that they had prevailed on only one of 15 issues.

■ Given the legislative history and case law cited above, we conclude that plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation

---

1. At the outset we note our adherence to our prior rulings and our consequent rejection of appellees' arguments that the Eleventh Amendment bars attorney's fees against the state, *see King v. Greenblatt,* 560 F.2d 1024, 1025–26 n. 2 (1st Cir. 1977); *Martinez Rodriguez v. Jimenez,* 551 F.2d 877 (1st Cir. 1977); and that the new Attorney's Fees Act does not apply to pending cases, *see Perez v. Rodriguez Bou,* 575 F.2d 21 at 24 (1st Cir. 1978); *King v. Greenblatt, supra.* The Supreme Court in *Hutto v. Finney,* —— U.S. ——, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) has recently upheld the position that the Eleventh Amendment does not bar an attorney's fee award against the state.

2. There is little case law interpreting the new Attorney's Fees Awards Act itself. However, the legislative history of the Act makes it clear that "It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act." Senate Rep. No. 94–1011, *supra,* U.S.Code Cong. & Admin.News, p. 5912. Therefore, we consider judicial interpretations of the term "prevailing parties" under the 1964 Act to be controlling precedent in interpreting the new Act.

which achieves some of the benefit the parties sought in bringing suit. However, the amount of attorney's fees they receive should be based on the work performed on the issues in which they were successful. In this case the statements of plaintiffs' counsel submitted to the court do not purport to indicate how much time was devoted to each issue or to the library access issue. But it does not appear that the question whether success on one issue entitled plaintiffs to be considered "prevailing parties" was made the focus of any consideration, and we cannot fairly hold plaintiffs foreclosed from attempting to reconstruct their time through estimates. As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.

■ In the instant case, we have no choice but to remand this matter for additional evaluation by the district court. We think it is clear that the library access issue was significant enough a victory for plaintiffs to be considered prevailing parties. For their work on that issue they "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *see Perez v. Rodriguez Bou, supra*, at 24. The district court made no mention of this issue in denying plaintiffs' request for attorney's fees and no special circumstances requiring a denial of an award have been brought to our attention other than the alleged impracticality of dividing up counsel's hours between the library issue and the other issues in this case. That in itself is an insufficient basis for denying fees entirely.[3] We would

add that although this issue was significant enough to pass the threshold qualification of "prevailing parties", it by no means could be said to have dominated the litigation. This factor of proportionality should be kept in mind in arriving at a fee award under this first rationale.

■ The second issue relating to attorney's fees based on the improvements in plaintiffs' conditions of confinement as required by the consent decree is more difficult to resolve. It is abundantly clear and the Senate Report specifically states that in general "parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief. *Kopet v. Esquire Realty Co.*, 523 F.2d 1005 (2nd Cir. 1975) and cases cited therein; *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970); *Richards v. Griffith Rubber Mills*, 300 F.Supp. 338 (D.Or.1969); *Thomas v. Honeybrook Mines, Inc.*, 428 F.2d 981 (3rd Cir. 1970); *Aspira of New York, Inc. v. Board of Education of City of New York*, 65 F.R.D. 541 (S.D.N.Y.1975)." Senate Rep. No. 94–1011, *supra. See also Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977); *Evans v. Sheraton Park Hotel*, 164 U.S.App.D.C. 86, 503 F.2d 177 (1974); *Parker v. Matthews*, 411 F.Supp. 1059 (D.D.C.1976), aff'd, *Parker v. Califano*, 182 U.S.App.D.C. 322, 561 F.2d 320 (1977). It is often explained that when plaintiff's lawsuit acts as a "catalyst" in prompting defendants to take action to meet plaintiff's claims, attorney's fees are justified despite the lack of judicial involvement in the result. *See Fischer v. Adams*, 572 F.2d 406 at 410 (1st Cir. 1978); *Evans v. Sheraton Park Hotel, supra; Parham v. Southwestern Bell Telephone Co., supra; Mental Patient Civil Liberties v. Hospital Staff*, 444 F.Supp. 981, 986 (E.D. Pa.1977).

However, applying the rule is not so simple as stating it. The two bounds of the

---

3. An example of the special circumstances which would make an award of attorney's fees inappropriate is described in *Naprstek v. City of Norwich*, 433 F.Supp. 1369 (N.D.N.Y.1977). In that case the court found the grounds for attacking an antiquated and rarely enforced

curfew statute to be "more contrived than real" and that plaintiffs had refused early in the lawsuit to negotiate a settlement to bring the offending statute into compliance with constitutional standards. Such circumstances are far removed from those in the case at bar.

continuum are well represented by the cases. In *Parham v. Southwestern Bell Telephone Co., supra,* the court found both that defendant had been acting illegally and that plaintiffs' lawsuit had in fact prompted the defendant to bring its employment practices into compliance with federal law. Attorney's fees were held to be properly awarded. On the other side of the continuum, in *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 273 (10th Cir. 1975), the court found that plaintiff had not established a pattern of class-wide discrimination and did not prove that defendant's new affirmative action program had been created in response to the litigation. Attorney's fees were not awarded on this issue. In the present case the legal issues were still in dispute at the time the consent decree was signed and there has never been a final judicial determination of whether or not defendant deprived plaintiffs of their constitutional rights. Moreover, the role of the plaintiffs' lawsuit in securing the improvements in their conditions of confinement is hotly disputed.

The district court denied plaintiffs attorney's fees on the grounds that defendants acted in good faith and that the improvements in plaintiffs' conditions of confinement resulted from the joint effort of plaintiffs' attorneys and New Hampshire officials, not plaintiffs' efforts exclusively. Defendants support this analysis and argue in addition that several condition of confinement suits were in process during the duration of plaintiffs' action and that the particular impact of plaintiffs' suit cannot be delineated. Finally, defendants contend on policy grounds that requiring parties who accept settlements to pay large attorney's fees awards will discourage out of court agreements and lead to unnecessary litigation.

We appreciate the difficulty of arriving at an attorney's fees award in a context of legal and factual uncertainty. And the district court might justify after some further probing and delicate weighing of interests a partial or even complete rejection of plaintiffs' claims for matters covered by the consent decree. But this uncertainty does not, in our view, justify the court's rejection of plaintiffs' fee request for the reasons stated in its order.

To begin with, the good faith of defendants is not a controlling factor in determining whether or not plaintiffs merit an award. In *Chastang v. Flynn & Emrich Co.,* 541 F.2d 1040 (4th Cir. 1976), the court concluded regarding attorney's fees that, "We cannot say that [the defendant Company] failed to act with reasonable dispatch as soon as a murky area of the law was clarified. It redressed its unintentional violation of the Act, and from the chronology of events we cannot infer that plaintiffs' law suits were a contributing factor. Of course, the Company's good faith alone would not insulate it from making plaintiffs whole." *Id.* at 1045. Other courts have also refused to deny attorney's fees despite defendant's protestations of good faith. *Brown v. Culpepper, supra; Parham v. Southwestern Bell Telephone Co., supra.* This conforms to the policy underlying the award of attorney's fees in civil rights cases. Attorney's fees are not designed merely to penalize defendants, *see Robinson v. Lorillard Corp.,* 444 F.2d 791, 804 (4th Cir. 1971), but to encourage injured individuals to seek judicial relief, *Newman v. Piggie Park Enterprises, Inc., supra,* 390 U.S. at 402, 88 S.Ct. 964. From this latter policy perspective it makes no difference whether plaintiff's suit yields favorable out of court results because a good faith defendant is brought to understand the illegality of his conduct and alters his behavior or because an unrepentant defendant grudgingly signs a consent decree to avoid continued litigation expenses in a lost cause. The key issue is the provocative role of the plaintiff's lawsuit, not the motivations of the defendant.

Leaving aside the district court's reference to the motivation of defendants, we cannot determine from its language its answers to the two critical questions which should control whether or not plaintiffs are prevailing parties on those issues resolved by the consent decree. The first question is one of fact. We agree with the Tenth

Circuit in *Taylor v. Safeway Stores, Inc., supra,* that no award is required if the court determines that plaintiff's suit was completely superfluous in achieving the improvements undertaken by defendants on plaintiff's behalf. But the district court made no such specific finding. However, if, as may well be the case here, the plaintiffs' suit and their attorney's efforts were a necessary and important factor in achieving the improvements, although they could not have accomplished as much as they did without the constructive leadership of New Hampshire officials, plaintiffs should be held to have overcome their first hurdle toward their goal of receiving *some* attorney fees. Of course, this is not an "all or nothing" determination. Our general recognition of relevant factors in fee awards, *see King v. Greenblatt,* 560 F.2d 1024 (1977), allows the court to reduce an award if the result is found to be jointly attributable to both parties.

On the other hand, the mere existence of other similar suits by other plaintiffs should not automatically be considered a basis for diminishing a plaintiff's award. Such a doctrine would, contrary to the objective of the Attorney's Fees Awards Act, be a powerful disincentive to legitimate actions, for the fact that there was more than one suit against officials of an institution would not merely bar the later attorneys from compensation but would jeopardize the fees of counsel in the original suit.[4]

■■■ We should also note that we consider the chronological sequence of events to be an important, although clearly not definitive factor, in determining whether or not defendant can be reasonably inferred to have guided his actions in response to plaintiff's lawsuit. This is particularly true where the evidence relevant to the causes of defendant's behavior is under defendant's control and not easily available to plaintiff.

■■■ Even if plaintiffs can establish that their suit was causally related to the defendants' actions which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense. *See Taylor v. Safeway Stores, Inc., supra.* In the present case while the district court's novel penological purpose theory of relief was not accepted, there has not yet been a judicial determination of whether plaintiffs' rights were violated under traditional standards of analysis. In such circumstances, one might argue that the district court cannot meaningfully decide the legal requirements that govern defendants' conduct without conducting the very trial the consent decree was signed to avoid. However, we believe the court has had sufficient exposure to the facts and law of this case to determine, whether if plaintiffs had continued to press their claims under traditional constitutional theory, their action could be considered "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978) (the standard under which defendants may be entitled to attorney's fees under the 1964 Civil Rights Act). If the court reaches that conclusion, we think it should deny plaintiffs' attorney's fees on those issues regardless of the impact of their suit on defendants' willingness to improve the conditions of confinement of the plaintiff class.

In conclusion, we should also note that we are sympathetic to defendants' policy argument that fear of a significant attorney's fee award may force defendants to continue litigating an issue not because they wish to

---

4. While a defendant who is subject to multiple suits may well find himself vulnerable to a greater amount of attorney's fees than a defendant subject to only a single suit, we believe that the procedural mechanisms available for class actions, consolidated suits and the like make it doubtful that our holding here will result in defendants having exaggerated attorney's fees exacted from them.

establish a legal principle or avoid meeting plaintiffs' concerns, but solely to escape if possible from onerous attorney's fees. But the argument cuts both ways. If defendants may refuse to settle a case and accept the cost of continued litigation to avoid paying attorney's fees, it is equally likely that plaintiffs' counsel, rather than receive no compensation at all for their efforts, would be willing to continue the litigation on the chance that they might cut if not eliminate their losses. We cannot decide this issue based on such honest but speculative concerns.

*We remand this case to the district court for further proceedings consistent with this opinion.*