730 F.2d 905
 The AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellant,
v.
Stuart E. LIEBOWITZ, d/b/a Claridge Agency Ltd., Claridge
Brokerage, Inc., Andrew Brokerage, Inc., Dina Brokerage,
Inc., Eric Brokerage, Inc., Jeffrey Brokerage, Inc., Kevin
Brokerage, Inc., Lisa Brokerage, Inc., Marian Brokerage,
Inc., Mickie Brokerage, Inc., and Robin Brokerage, Inc.,
Defendants-Appellees.
 No. 606, Docket 83-7728.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 23, 1984.
Decided March 26, 1984.
 
 Marvin Wexler, New York City (Karen Shatzkin, Kornstein, Meister & Veisz, New York City, of counsel), for plaintiff-appellant.
 Richard S. Mezan, New York City (Martin R. Pollner, William M. Pinzler, Pollner, Mezan & Stolzberg, P.C., New York City, of counsel), for defendants-appellees.
 Before MANSFIELD, PIERCE and WINTER, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 This appeal raises a question of first impression: whether a plaintiff who obtains a preliminary injunction in a civil action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-1968, and then settles the case, is entitled to an attorney's fee award. Plaintiff Aetna Casualty and Surety Company ("Aetna") appeals from a decision of the Eastern District of New York, Circuit Judge George C. Pratt, sitting by designation, 510 F.Supp. 908, denying its motion for attorney's fees and costs. The district court ruled that the relevant RICO provision, Sec. 1964(c), permits an attorney's fee to be awarded only to a plaintiff who obtains a judgment for damages on the merits; since Aetna settled its claim before trial, he denied the motion for fees and costs. We affirm.
 
 
 2
 Aetna filed this suit under, inter alia, 18 U.S.C. Sec. 1964 in August 1981, claiming that defendant Stuart Liebowitz, an insurance broker, illegally converted to his own use money paid to him as insurance premiums by applicants for automobile insurance through New York's assigned risk pool. The premiums belonged to Aetna and other insurers and were required to be deposited in a trust account for their benefit. Instead, Liebowitz kept the applicants' payments, and sent his own checks on to the insurers; those checks were returned for insufficient funds. Aetna alone received 321 bad checks with a total face value of $51,006.55 and it represented only 8.7% of the plan's business. Thus Liebowitz's practice bore all the earmarks of deliberate fraud. Aetna alleged that his activities violated the mail fraud statute, 18 U.S.C. Sec. 1341, which is specified in 18 U.S.C. Sec. 1961(1)(B) as a predicate offense for a RICO violation, 18 U.S.C. Sec. 1962(c).[1] Aetna also alleged several state law causes of action, including conversion and breach of contract.
 
 
 3
 In October 1981 Aetna moved for a preliminary injunction that would require Liebowitz to pay insurers by certified check or money order. On December 8, 1981, after three days of live testimony Judge Pratt found a likelihood of success on the merits, a probability of irreparable harm to the plaintiff, and a balance of hardships in Aetna's favor. Accordingly he granted the injunction pursuant to Fed.R.Civ.P. 65. In doing so, Judge Pratt expressly stated that he was not acting on the state law claims: "I view my function as simply enforcing federal law as it is set forth in the Civil RICO statute and the mail fraud statute."
 
 
 4
 After further discovery Aetna moved in April 1982 for summary judgment. On April 29, 1982, however, the parties agreed to settle the action. Under the terms of the settlement agreement Liebowitz would be permanently enjoined from participating in the insurance business, he would be liable to Aetna for $160,000, and Aetna would apply to the district court for an award of attorney's fees and costs. The agreement also provided, however, that Aetna would not seek to enforce the $160,000 judgment or to collect any fees it might be awarded, provided Liebowitz paid Aetna $100,000 by October 21, 1982. Judgment in accordance with the settlement was filed on May 7, 1982. The record indicates that Liebowitz has defaulted on the $100,000 payment and that Aetna has instituted proceedings to enforce the $160,000 judgment.
 
 
 5
 Aetna moved for an award of attorney's fees and costs in May 1982, arguing that such an award was allowed under 18 U.S.C. Sec. 1964(c). After affirming his authority to grant the previously-issued preliminary injunction Judge Pratt denied the motion for attorney's fees. He ruled that in the absence of statutory language authorizing an award of such fees to a "prevailing party" and in view of the close parallel between the language of Sec. 1964(c) and that of previously-construed identical language of Sec. 4 of the Clayton Act, 15 U.S.C. Sec. 15, from which it was borrowed, an award of attorney's fees must be denied.
 
 DISCUSSION
 
 6
 Appellant's right to an attorney's fee turns on the construction to be given to 18 U.S.C. Sec. 1964(c), which provides:
 
 
 7
 "(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."
 
 
 8
 Unless this language may be construed to permit an attorney's fee award, the judgment of the district court must be affirmed, Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 269-71, 95 S.Ct. 1612, 1627-28, 44 L.Ed.2d 141 (1975) (with few exceptions the "American Rule" requires each party to bear his attorney's fees).
 
 
 9
 Even when the foregoing language is liberally construed to effectuate RICO's purpose, as the statute expressly commands us to do, see Sec. 904(a) of Pub.L. 91-452, 84 Stat. 947,[2] and as would in any event be required in construing a fee-shifting provision, see Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 415-17, 98 S.Ct. 694, 697-98, 54 L.Ed.2d 648 (1978); Carey v. New York Gaslight Club, Inc., 598 F.2d 1253, 1256 (2d Cir.1979), aff'd, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), it appears on its face to require a civil RICO plaintiff, in order to qualify for an attorney's fee, first to prove that he has suffered injury to his business or property as a result of the RICO violation and to recover the damages sustained and the cost of the suit, of which the attorney's fee would be deemed part. Nothing in the statute's language indicates an intent to authorize an attorney's fee award for obtaining injunctive relief, as distinguished from damages, or for a plaintiff's successfully negotiating a settlement of his claim. No general or flexible terms permitting such a construction are to be found; the statute says treble damages "and" attorney's fees, not "or" attorney's fees. Absent legislative history or other evidence to the effect that Congress meant something other than what it provided in plain language, we are powerless to change the statute's terms. Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); Burns v. Alcala, 420 U.S. 575, 580-81, 95 S.Ct. 1180, 1184-85, 43 L.Ed.2d 469 (1975).
 
 
 10
 Turning to the legislative history of Sec. 1964(c), we find nothing indicating a Congressional intent to authorize an award of attorney's fees when there has been less than a final recovery of damages and costs. Indeed, the history on the subject is completely silent. RICO was enacted in 1970, several years before Congress undertook a program of widespread encouragement of private enforcement of certain laws through enactment of provisions authorizing attorney's fee awards to a "prevailing party," a term considerably broader and more flexible than that found in Sec. 1964(c). The fee-award terms of RICO, in contrast, appear to have been borrowed almost verbatim from Sec. 4 of the Clayton Act, 15 U.S.C. Sec. 15. See 113 Cong.Rec. 17,999 (1967) (Statement of Senator Hruska). Section 4 provides:"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."
 
 
 11
 At the time when Congress imported this language from Sec. 4 into RICO, the Clayton Act had long been construed by federal courts as not authorizing an attorney's fee to be awarded to a plaintiff who only obtained injunctive relief, as distinguished from one who successfully prosecuted his antitrust claim to a judgment for damages. See, e.g., Ring v. Spina, 84 F.Supp. 403, 408 (S.D.N.Y.1949); Alden-Rochelle, Inc. v. ASCAP, 80 F.Supp. 888, 899 (S.D.N.Y.1948); Allen Bradley Co. v. Local Union No. 3, 51 F.Supp. 36, 40 (S.D.N.Y.1943).
 
 
 12
 The general interpretation of Sec. 4 was summarized by the court in Byram Concretanks, Inc. v. Warren Concrete Prods., 374 F.2d 649, 651 (3d Cir.1967):
 
 
 13
 "In a long line of cases the courts have interpreted this section of the Clayton Act not to permit plaintiffs to recover attorneys' fees unless treble damages are awarded, regardless of whether injunctive relief is granted. Clabaugh v. Southern Wholesale Grocers Association, 181 F. 706 (C.C.Ala.1910); Decorative Stone Co. v. Building Trades Council of Westchester County, 23 F.2d 426 (2nd Cir.1928); Allen Bradley Co. v. Local Union No. 3, I.B. of E. Workers, 51 F.Supp. 36 (D.C.N.Y.1943); Alden-Rochelle, Inc. v. American Soc. of C., A. and P., 80 F.Supp. 888 (D.C.N.Y.1948); but compare Finley v. Music Corp. of America, 66 F.Supp. 569 (D.C.Calif.1946)." 374 F.2d at 651.
 
 
 14
 In view of this settled interpretation of Sec. 4, of which Congress was presumptively aware, it is unlikely that it would have used the identical language in Sec. 1964(c) if it intended that statute to authorize an award of attorney's fees for enforcement efforts short of full recovery. As Congress later demonstrated, when it desired to permit attorney's fees to be awarded to a plaintiff who does not litigate his claim through to trial, it knew how to say so, using such broad terms as "substantially prevails" or the "prevailing party."[3] It is this broad language, nowhere to be found in civil RICO, that permits one who has not obtained a final decision on the merits to be eligible for a fee award. See Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978); Foster v. Boorstin, 561 F.2d 340, 342-43 (D.C.Cir.1977); Environmental Defense Fund v. Watt, 554 F.Supp. 36, 39 (E.D.N.Y.1982); Parker v. Matthews, 411 F.Supp. 1059, 1061-64 (D.D.C.1976), aff'd, 561 F.2d 320 (D.C.Cir.1977). Defendant's argument that the "substantially prevailing" notion did not arise until after 1970, when RICO was enacted, only confirms our view that Congress did not intend to adopt that concept in RICO. In construing the statute we can look only to Congress' intent when it passed the legislation and not to unverifiable guesses as to what its intent would be today.
 
 
 15
 Aetna argues that the foregoing restrictive interpretation of Sec. 4 of the Clayton Act is neither binding nor relevant to the interpretation of Sec. 1964(c) of RICO for the reason that the Clayton Act contained two remedy provisions, one authorizing recovery of damages (Sec. 4) and the other injunctive relief (Sec. 16), whereas RICO contains only one section (Sec. 1964(c)) which does not refer to injunctive relief. Section 16 of the Clayton Act did not (prior to its amendment in 1976) authorize an attorney's fee award to a plaintiff who succeeded in obtaining injunctive relief. Since RICO, on the other hand, does not have any equivalent to Sec. 16 of the Clayton Act, Aetna argues that Sec. 1964(c) should be construed liberally to permit a fee award for obtaining injunctive relief. The argument, being a non sequitur, must fail.
 
 
 16
 The existence or non-existence in RICO of a provision comparable to Sec. 16 of the Clayton Act cannot provide the basis for changing the language of Sec. 1964(c) of RICO. Indeed, once the Supreme Court handed down Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), which postdated the enactment of the Clayton Act, a specific statutory provision authorizing preliminary injunctive relief to maintain the status quo was no longer necessary, for in Bell v. Hood, the Court stated that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." 327 U.S. at 684, 66 S.Ct. at 777. See also SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103-04 (2d Cir.1972). More importantly, when Congress enacted RICO in 1970 the unavailability of attorney's fees under Sec. 16 of the Clayton Act was well settled. Yet Congress took no steps in enacting RICO to expressly authorize attorney's fees to a plaintiff obtaining preliminary or any other kind of injunctive relief. Indeed, it was not until 1976, in response to Alyeska, that Congress amended Sec. 16 to allow for an award of attorney's fees in an action for injunctive relief. Pub.L. 94-435, Tit. III, Sec. 302(3), 90 Stat. 1396. In so doing, Congress expressly authorized a grant of fees to an antitrust plaintiff who "substantially prevails." It could have made the same amendment to civil RICO but did not.
 
 
 17
 We do not dispute that an award of attorney's fees to plaintiffs who obtain injunctive relief against violations of RICO or who successfully settle damage suits under that law would encourage enforcement of the statute by private attorneys general. Indeed, a plaintiff who recovers treble damages may have less need for the incentive of an attorney's fee award than one who obtains injunctive relief.
 
 
 18
 If Congress were enacting RICO de novo today it could adopt a broad fee-shifting provision of the "prevailing party" or "substantially prevailed"-type that has been the hallmark of scores of more recently-enacted laws. But Congress is not passing RICO today. We are called upon to interpret a statute passed back in 1970 before the nuances and scope of private enforcement were fully recognized. We cannot change the law to shift attorney's fees because it might be in the public interest; that is the teaching of Alyeska. We are bound by the legislative intent that existed when RICO was passed. Congress is free to change that law if it desires.
 
 
 19
 The judgment of the district court is affirmed.
 
 
 
 [1]
 "Sec. 1962. Prohibited activities
 "(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity of the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
 "(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
 "(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 "(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."
 
 
 [2]
 "(a) The provisions of this title [enacting this chapter and amending sections 1505, 2516, and 2517 of this title] shall be liberally construed to effectuate its remedial purposes."
 
 
 [3]
 See, e.g., Freedom of Information Act, 5 U.S.C. Sec. 552(a)(4)(E) (awarding fees where "the complainant has substantially prevailed"); Equal Access to Justice Act, 28 U.S.C. Sec. 2412(d)(1)(A) ("prevailing party"); Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988 ("prevailing party"); Equal Employment Opportunity Act of 1972, 42 U.S.C. Sec. 2000e-5(k) ("prevailing party"); Age Discrimination Act of 1975, 42 U.S.C. Sec. 6104(e) ("prevailing plaintiff"); Agricultural Fair Practices Act, 7 U.S.C. Sec. 2305(a), (c) ("prevailing party"); Civil Rights Act of 1964, Title II, 42 U.S.C. Sec. 2000a-3(b) ("prevailing party"); Civil Service Reform Act of 1978, 5 U.S.C. Sec. 7701(g) ("prevailing party"); Clean Air Act, as amended, 42 U.S.C. Secs. 7604(d), 7622(e)(2) (to "any party" in court's discretion); Jury System Improvements Act of 1978, 28 U.S.C. Sec. 1875(d)(2) ("prevailing employee"); Justice System Improvement Act, 42 U.S.C. Sec. 3789d(c)(4)(B) ("prevailing plaintiff"); Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. Sec. 1415(g)(4) (to "any party" in court's discretion); Trademark Act, 15 U.S.C. Sec. 1117 ("prevailing party"); Voting Rights Amendments of 1975, 42 U.S.C. Sec. 1973l(e) ("prevailing party"); Water Pollution Control Act, 33 U.S.C. Sec. 1365(d) (to "any party" in court's discretion)