J & J ANDERSON, INC., d/b/a Feathaire Aviation, Inc., a Colorado Corporation, Joanne Marie Anderson, Gerald Leverantz, David Nixon, and Monte Haskell, Plaintiffs-Appellants,

v.

The TOWN OF ERIE, a Colorado Municipal Corporation, Defendant-Appellee.

No. 84–2110.

United States Court of Appeals, Tenth Circuit.

July 18, 1985.

Neil E. Piller, Schey & Schey, P.C., Longmont, Colo., for plaintiffs-appellants.

Barre M. Sakol, Thorburn, Sakol & Throne, Boulder, Colo., for defendant-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

J & J Anderson, Inc., *et al.*, appellants, seek review of an order of the district court denying their request for attorney's fees

made under 42 U.S.C. § 1988.[1] The relevant facts may be briefly summarized.

J & J Anderson, Inc. is a Colorado corporation whose principal business is the training of ultralight aircraft pilots and the sale, repair, maintenance and service of ultralight aircraft. The corporation commenced business in July, 1982, at the Tri-County Airport, a privately owned airport located within the boundaries of the town of Erie, Colorado. The individual appellants are three ultralight aircraft pilots.

By September, 1983, the board of trustees of the town of Erie had received numerous complaints about the operation of ultralight aircraft in and about the town. During regularly scheduled board meetings it was not uncommon for the board to have "fifty or sixty people in the audience complaining about ultralight operations," and the number of complaints "reached a point where the trustees had to limit testimony on ultralight aircraft." (R., Vol. II at 55.) The complaints involved the safety of those on the ground but most complaints from citizens related to noise. *Id.* at 58. At no time did any area residents appear before the board in support of ultralight operations. *Id.* at 56.

On December 8, 1983, the Town of Erie, acting through its board of trustees, promulgated and enacted Ordinance No. 339, prohibiting any ultralight aircraft from landing or taking off within the town. (Ordinance No. 339 is set forth in Appendix A, attached hereto.) The ordinance had an effective date of January 14, 1984.

On January 13, 1984, appellants filed their complaint alleging that the Town of Erie had violated their constitutional rights by adopting Ordinance No. 339. Appellants sought to have the ordinance declared unconstitutional and to have its enforcement enjoined. Plaintiffs-Appellants alleged that the ordinance denied them their rights to equal protection as guaranteed by the 14th Amendment in that it prohibits ultralights from taking off and landing while permitting other small aircraft from continued use of the airport; further, they alleged that the ordinance constituted a "taking" in violation of the just compensation clause of the 5th Amendment as made applicable to the states by the 14th Amendment, in that there is no just compensation for "taking fundamental property rights from Plaintiffs, specifically the right to carry on a lawful occupation, the right to own and enjoy private property, and the right of freedom of transit through navigable airspace guaranteed by 49 U.S.C., section 1304." (R., Vol. I, p. 24.) A hearing was held on January 23, 1984, on appellants' motion for a temporary restraining order, after which the district court entered an order enjoining enforcement of the ordinance. In so doing the district court ruled:

... upon the finding and conclusion that there is a high probability that Ordinance No. 339 ... is so overbroad in its prohibitions as to be a confiscation of the plaintiffs' property rights and is also an interference with F.A.A. regulations, and it appearing that plaintiffs have no adequate remedy at law....

ORDERED, that the enforcement of Ordinance No. 339 ... is restrained until conclusion of the hearing on the plaintiffs' motion for preliminary injunction, which is set for February 2, 1984 ...

Thereafter, the parties extended the term of the temporary restraining order until March 17, 1984, to permit settlement discussions.

On March 7, 1984, the district court held a hearing on a motion to intervene filed by the owner of Tri-County Airport and several other parties. The district court denied the motion to intervene, finding "very substantial factual and legal issues in dispute between plaintiffs and those who sought to intervene with respect to a lease and certain other matters concerning the plaintiffs' operations at the airport." (R. Vol I

---

**1.** Section 1988 provides in part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

at 83.) On March 21, 1984, the hearing date set for appellants' motion for preliminary injunction, the parties notified the court that the issues between them had been resolved by the repeal of the offending ordinance. The parties also stipulated to an extension of the restraining order until its repeal was effected by publication of the repealing ordinance.

At that juncture, the sole issue before the district court was appellants' request for costs of $232.75 and attorney's fees of $8,433.00. In a subsequent order denying appellants' request for costs and attorney's fees, the court stated:

> While this court has not ruled on the merits of the controversy set forth in the complaint, the plaintiffs can be considered to be prevailing parties under *Chicano Police Officer's Ass'n. v. Stover*, 624 F.2d 127 (10th Cir.1980). Nonetheless, it is this court's view that the award of costs and attorney's fees to the plaintiffs in this action would be unjust. It is apparent from the testimony presented during the hearing on the motion for temporary restraining order, and even more apparent from the motion to intervene and the pleadings tendered therewith, together with the briefs in support and opposing that motion, that in this situation the Town of Erie Town Council became involved in what was essentially a private dispute between the residents of a particular subdivision near the airport, the airport owners, and the plaintiffs. This is not a case in which the plaintiffs were acting as a "private attorney general" to vindicate a public interest. Indeed, the plaintiffs were here to assert a private property right, and, while there are, of course, constitutional overtones to the protection of property against confiscatory governmental action, the constitutional issue in this case is somewhat secondary. Additionally, it is to be emphasized that this court's temporary restraining order was also based upon a conclusion that there was a likely interference with FAA regulations. That ground would not support an award of attorney's fees under § 1988. Certainly no attorney's fees should be awarded for the opposition to the motion to intervene.

> It is the view of this court that when the Town of Erie Town Council became aware of the constitutional implications of its actions through this court's temporary restraining order, the Council acted promptly in repealing the offending ordinance and should not now be called upon to pay attorney's fees.

R. Vol. I at 84.

On appeal, appellants present one issue; i.e., did the district court abuse its discretion in refusing to award them costs and attorney's fees under § 1988?

Appellants contend that they were the prevailing parties and are therefore entitled to receive reasonable attorney's fees under § 1988. Appellants note that the district court properly found that they were prevailing parties under our *Chicano Police Officers Association v. Stover*, 624 F.2d 127 (10th Cir.1980). Appellants further contend, citing to *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), that, as prevailing parties, they were entitled to attorney's fees under § 1988 unless special circumstances rendered the award of attorney's fees unjust. The court's grounds for denial of attorney's fees were its findings that the appellants were asserting a private property right, that the constitutional issues were secondary, and that Erie promptly repealed the ordinance once the constitutional implications of adopting the statute became clear. According to appellants, none of these findings constitutes special circumstances under § 1988; thus, the denial of an award of reasonable attorney's fees was an abuse of the court's discretion.

In response, Erie argues that appellants were not prevailing parties because they failed to meet the two-part test for a prevailing party established in *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978), which was cited with approval in our decision in *Operating Engineers Local Union No. 3 v. Bohn*, 737 F.2d 860 (10th Cir.1984). In

*Nadeau,* the court held that a person who brings an action alleging a civil rights violation, but who does not receive a judgment on the merits, is still a prevailing party for purposes of § 1988 if he shows (1) that his lawsuit is causally linked to securing the relief obtained and (2) that the defendant's conduct in response to the lawsuit was required by law.

Erie argues that appellants failed to meet the first part of the *Nadeau* two-part test since "[t]here is a total absence of evidence to demonstrate that Plaintiffs' lawsuit was a necessary factor in improving their situation. The record is devoid of any evidence to demonstrate that Plaintiffs attempted to obtain relief from Ordinance No. 339 prior to filing their lawsuit." (Defendant-Appellee's Brief on Appeal at 4.) Erie further argues that the appellants failed to meet the second part of the *Nadeau* test because they failed to establish that its (Erie's) conduct in response to the lawsuit was required by law.

Erie also argues, citing to *Zarcone v. Perry,* 581 F.2d 1039 (2nd Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), that even if appellants are considered prevailing parties, special circumstances justify the denial of attorney's fees. According to Erie, the special circumstances supporting denial of attorney's fees in the instant case include, *inter alia:* the size of the benefits conferred on the public by the suit were minimal and would not justify an award; appellants' claim did not involve civil rights of broad significance prosecuted on behalf of a large class; the town acted in good faith and the appellants, if anyone, acted in bad faith by failing to attempt a resolution of the matter prior to initiating litigation.

■ As set forth, *supra,* the trial court found that it would be unjust to award appellants attorney's fees when, as here, the appellants were asserting a private property right, the constitutional issues were somewhat secondary, and the town acted promptly in repealing the offending ordinance. It is our view that these are all important factors to be considered by the

district court in determining the reasonableness of the *amount* of attorney's fees to be awarded. However, we disagree with the district court's findings that these factors constituted special circumstances justifying the denial of *any* attorney's fees to the appellants.

In *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) the Supreme Court pertinently observed that:

[M]any civil rights cases will present a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to decide the hours expended on a claim-to-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. *Instead, the district court should focus on the significance of the overall relief obtained* (in vindication of significant constitutional issues) *in relation to the hours expended on the litigation.* (Emphasis supplied.)

*See also, In Re Kansas Congress Dist. Reapportionment Cases,* 745 F.2d 610 (10th Cir.1984).

In *Consol. Freightways Corp. of Del. v. Kassel,* 730 F.2d 1139 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984), the court recognized the rule that the fact that a party prevails on grounds other than § 1983 does not preclude the award of attorney fees under § 1988:

... [I]f § 1983 would have been an appropriate basis for relief ... even though relief was actually awarded on another ground. See Maher v. Gagne, 448 U.S. 122 [100 S.Ct. 2570, 65 L.Ed.2d 653] ... (1980). (Emphasis supplied).

730 F.2d at 1141, 1142.

■ The provisions of 42 U.S.C. § 1983 apply only to persons who deprive others of rights secured by the Constitution or laws of the United States and who act under color of state statute, ordinance, regula-

tion, custom, or usage. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1428 (10th Cir. 1984). In *Vakas v. Rodriquez,* 728 F.2d 1293 (10th Cir.1984) *cert. denied,* — U.S. ——, 105 S.Ct. 384, 83 L.Ed.2d 319 (1981), the trial court had refused to award the prevailing defendant in a § 1983 action attorney's fees. After observing that attorney's fees may be awarded to a prevailing defendant pursuant to 42 U.S.C. § 1988 if the plaintiff's claim is found to be frivolous, unreasonable or groundless, citing to *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) and *Prochaska v. Marcoux,* 632 F.2d 848 (10th Cir.1980), we upheld the trial court, noting that, while this court might have found otherwise, the record did evidence "some slight legal support" for the constitutional deprivations claimed by the plaintiff. *Id.* at 1297. *Accord Pike v. City of Mission, Kan.,* 731 F.2d 655 (10th Cir. 1984).

*Hensley v. Eckerhart, supra,* reaffirmed the rule that a prevailing plaintiff alleging a civil rights grievance should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. The Court was reiterating earlier, similar holdings set forth in *Roadway Express, Inc. v. Piper, supra,* and *Newman v. Piggie Park Enterprises, supra.* We have adopted and repeatedly followed the same standard. *See, e.g., Cooper v. Singer,* 719 F.2d 1496 (10th Cir.1983); *Gurule v. Wilson,* 635 F.2d 782 (10th Cir.1980); *Chicano Police Officers Association v. Stover, supra; Love v. Mayor, City of Cheyenne,* 620 F.2d 235 (10th Cir.1980).

■ We have recognized that: the purpose of § 1988 was to enable litigants with valid claims to present their claims without having to bear the burden of the costs, *Turman v. Tuttle,* 711 F.2d 148 (10th Cir. 1983); the district court's discretion in denying attorney's fees to prevailing parties is quite narrow, *Chicano Police Officers Association v. Stover, supra;* there are few cases denying attorney fees to a pre-

vailing party as unjust under § 1988, *Love v. Mayor, City of Cheyenne, supra;* and the right to attorney's fees under § 1988 is not conditioned upon a judicial determination on the merits. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Chicano Police Officer's Association v. Stover, supra; Morrison v. Ayoob,* 627 F.2d 669 (3rd Cir.1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981).

■ A strong showing of special circumstances is necessary to support a denial of attorney fees. *Riddell v. National Democratic Party,* 624 F.2d 539 (5th Cir. 1980). Good faith is not a special circumstance justifying the denial of attorney's fees under § 1988. *Love v. Mayor, City of Cheyenne, supra; Espino v. Besteiro,* 708 F.2d 1002 (5th Cir.1980); *Nadeau v. Helgemoe, supra.* Attorney's fees are not to be denied under § 1988 merely because the action provided a private benefit to the plaintiff rather than a public benefit to a class of similarly situated persons. *Wheatley v. Ford,* 679 F.2d 1037 (2nd Cir.1982). The fact that a case was "simple" or could be "routinely handled" does not justify denial of § 1988 attorney's fees. *Staten v. Housing Authority of the City of Pittsburgh,* 638 F.2d 599 (3rd Cir.1980). Nor does mere uncertainty in the law establish special circumstances justifying the denial of attorney's fees under § 1988. *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Thus, where § 1983 is an appropriate basis for relief, attorney's fees have been deemed proper under § 1988 even though the plaintiff prevailed on other grounds. *Consol. Freightways Corp. of Del. v. Kassel, supra.* Attorneys fees are, for the most part, absent special circumstances, awarded as a matter of course to prevailing parties under § 1988. *Espino v. Besteiro, supra.*

■ We turn now to the critical question to be determined: Could the plaintiffs-appellants substantially prevail on their § 1983 claim in this case? The reason that

this inquiry must be addressed and answered is that, under *Nadeau v. Helgemoe, supra,* in order to be a "prevailing party" the plaintiff must show (1) that his action is causally linked to the relief obtained and (2) the defendant's conduct in response to the lawsuit was required by § 1983. Our attention is directed to the second prong of the *Nadeau* test. In suits alleging § 1983 violations which result in settlements or consent decrees favorable to the relief requested by the plaintiff, the district court, on a § 1988 application by the plaintiff for attorney's fees, must first and foremost determine whether, regardless of the result, the lawsuit, as a matter of law, involved the vindication of rights secured to the plaintiff by the Constitution or laws of the United States. In *Williams v. Leatherbury,* 672 F.2d 549, 551 (5th Cir.1982), the court observed:

> Indeed, a defendant may unilaterally undertake action that moots the suit. In such a case, a plaintiff may still recover attorney's fees if he can show both a causal connection between the filing of the suit and the defendant's action *and that the defendant's conduct was required by law, i.e., not a wholly gratuitous response to an action that in itself was frivolous or groundless.*
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Causal connection turns on "the provocative role of the plaintiff's lawsuit." (Citation omitted). The suit must be *"a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior."* *Robinson v. Kimbrough,* 652 F.2d 458, 466 (5th Cir.1981). *See also Iranian Students Association v. Sawyer,* 639 F.2d 1160, 1163 (5th Cir.1981); *Gurule v. Wilson,* 635 F.2d 782, 791 (10th Cir.1980) ... (Emphasis supplied).

■ We note as a preliminary matter that a party need not, as urged by Erie, exhaust available state administrative remedies prior to initiating a § 1983 action in order to qualify as a prevailing party entitled to attorney's fees under § 1988. In *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Court specifically held that a party need not exhaust available state administrative remedies prior to bringing a § 1983 action. Erie's reliance upon our adoption of *Nadeau v. Helgemoe, supra,* in *Operating Engineer Local Union No. 3 v. Bohn, supra,* for the proposition that a prevailing party must establish that he attempted to obtain other relief prior to initiating a § 1983 action does not comport with our holding in *Operating Engineer Local No. 3 v. Bohn, supra,* or the Supreme Court's holding in *Patsy v. Florida Board of Regents, supra.* Failure to exhaust available remedies prior to filing a § 1983 action does not, in and of itself, preclude one from becoming a prevailing party under § 1988.

■ Appellants contend that they would substantially prevail on their § 1983 claim because certain regulations promulgated by the FAA pursuant to the Federal Aviation Act, 49 U.S.C. § 1301, *et seq.,* preempt the effect of the Erie ordinance. Appellants acknowledge that the Federal Aviation Act does not contain explicit language preempting Erie's zoning ordinance. They contend, however, that the pervasive nature of the scheme of Federal regulation of aircraft preempts the subject of safety and noise abatement, relying principally on *City of Burbank v. Lockheed Air Terminal,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). After citing to provisions of the Federal Aviation Act, which appellants contend grant the FAA the broadest of authority to control the operation of aircraft in the navigable airspace of the United States, appellants point to 14 C.F.R. § 103.15 which provides that "No person may operate an ultralight vehicle over any congested area of a city, town or settlement or over any open air assembly of persons"; and 49 U.S.C. § 1421 which authorizes the FAA to allow ultralight aircraft to fly without air worthiness certificates or licensing of pilots, as preempting the power of Erie to enter the area of aircraft safety and flight control. The Town of Erie's position is that even though

the FAA has enacted regulations governing the operation of ultralight vehicles, this regulatory field is not reserved exclusively to the federal government and therefore the federal government has not pre-empted the exercise of the police power of the Town of Erie set forth in Ordinance No. 339. Erie contends that the ordinance does not prohibit the business of selling ultralight vehicles, the business of training pilots in two seater ultralights, the right to own ultralights or the freedom of transit over the town of Erie. The ordinance forbids single occupancy operated ultralights, used or intended for recreation or sport purposes only, from take-offs or landings within the town of Erie.[2] The Commerce Clause does, by implication, limit state and municipal authority to enact laws regulating interstate commerce. *Arkansas Elec. Co-Op Corp. v. Arkansas Public Service Comm'n*, 461 U.S. 375, 103 S.Ct. 1905, 76 L.Ed.2d 1 (1983). However, it has been recognized that when a compelling public interest, such as community safety, is involved, the states and municipalities have a legitimate local concern which may be regulated by a zoning ordinance, notwithstanding the fact that such ordinance affects interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

▆▆▆ The Commerce Clause of the Constitution, Art. 1, § 8, cl. 3, is a limitation upon the power of the states to regulate commerce. However, state regulations touching upon safety may be valid if they do not place a substantial burden on interstate commerce. *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978). The question in each case is, as posited in *Pike v. Bruce Church, Inc., supra*, whether the state legislation in the field of safety is "clearly excessive in relation to the putative local benefits." In any event, the Commerce Clause deals with the relationship between national and state interests, and does not deal with the protection of individual rights. *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981); *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978); *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959). The Commerce Clause does not secure rights cognizable under 42 U.S.C. § 1983 in that a Commerce Clause violation would not deprive an individual of any right, privilege, or immunity secured by the Constitution. *Consolidated Freightways Corp. of Delaware v. Kassel, supra*, 730 F.2d at 1144. Accordingly, the Court there held that the claim for attorney's fees pursuant to 42 U.S.C. § 1988 was not well taken.

▆▆▆ In like manner, in *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Supreme Court held that the Supremacy Clause describes rights secured by the Constitution or by an act of Congress, but it is not the source of any federal rights; it simply secures federal rights created by treaty, statute or regulation. Erie acknowledges that the trial court "properly found that Ordinance No. 339 violated the Supremacy Clause and, possibly the Commerce Clause. However, that does not allow recovery pursuant to 42 U.S.C. section 1988" (Brief of Defendant-Appellee, p. 10). We agree. The Commerce Clause and the Supremacy Clause, although limiting the power of the states to interfere in areas of national concern, do not secure rights cognizable under § 1983. This section was enacted to insure a "right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted pursuant thereto." *Chapman v. Houston Welfare Rights Organization, supra*, 441 U.S. at 611, 99 S.Ct. at 913. Thus, § 1983 does not provide a remedy for claims re-

---

2. The purpose of the prohibition, i.e., safety to the inhabitants may, in fact, be consistent with FAA regulations. § 103.9(a) provides that no person may operate any ultralight vehicle in a manner that creates a hazard to other persons or property. § 103.15 provides that no person may operate an ultralight over any congested area of any city or town. § 103.19 prohibits operation of ultralights in prohibited or restricted areas.

sulting from violations of the Commerce Clause or the Supremacy Clause. It follows that an attorney's fee claim under § 1988, based on a § 1983 action involving an alleged violation of the Commerce Clause and the Supremacy Clause of the Constitution of the United States, can have no merit.

In considering whether the plaintiffs-appellants might have substantially prevailed on their § 1983 "taking" claim in this case, we deem it necessary to carefully review and consider such cases as *Penn Central v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (the claim was there made that the application of New York City's ordinance permitting designation of private property—Grand Central Station—as historic landmarks, thus prohibiting the owner from use for other purposes, was a "taking" of property without compensation in violation of the Fifth Amendment, made applicable to the States by the Fourteenth Amendment; the Supreme Court held that this zoning ordinance did not constitute a "taking" and that land-use zoning ordinances that destroy or adversely affect real property interests designed to preserve historic or aesthetic interests are valid; the Court observed that it had often upheld such ordinances regulating an owner's use of his property when deemed necessary to promote the public interest and that a "taking" may be more readily found if the government interference involves an actual physical intrusion or occupation of the property, rather than a government restriction on its use); *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (appellants acquired five acres of unimproved land for residential development; the City enacted zoning ordinances placing appellants' property in a zone in which the property could be devoted only to one-family dwellings, etc., with density restrictions which effectively limited appellants to building of between one and five single-family residences on the tract; appellants sued alleging that the zoning ordinances involved a "taking" of their property without just compensation in violation of

the Fifth and Fourteenth Amendments; the Court held that the zoning ordinances do not take appellants' property in violation of the Fifth Amendment inasmuch as the ordinances advance the legitimate governmental goal of discouraging premature and unnecessary conversion of open-space land to urban uses and were therefore a proper exercise of the City's police power to protect its citizens from the ill effects of urbanization; the public interest outweighs the diminution in market value that appellants might suffer); *Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (Congress, in light of the extensive Commerce Clause authority over the Nation's waters, may prescribe rules governing a private marina so as to assure the public free right of access thereto without involving a "taking" requiring just compensation). *See also, Los Angeles City Council v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (upholding a municipal ordinance prohibiting posting of campaign signs on public property—a First Amendment speech exercise—in recognition of the public interest in preventing visual clutter and traffic safety); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982); *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 491, 101 S.Ct. 2882, 2883, 69 L.Ed.2d 800 (1981) (upheld city ordinance prohibiting erection of outdoor advertising displays within City against a First Amendment commercial speech challenge in recognition of governmental goals of safety to motorists and pedestrians and the appearance of the City); *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

■ A city's zoning power is a proper exercise of the state police power, *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), and if the zoning ordinance is enacted to protect public health and safety, it is ranked high on the list of zoning objectives possessed by a municipality; there is broad legislative discretion in meeting these ob-

jectives. 82 Am.Jur.2d, § 45, Zoning and Planning, Public Safety; Traffic; 101A C.J.S., Zoning and planning, § 270; Anno., 95 ALR 2d 724.

We hold that, based on the record before us, the district court erred in finding that special circumstances rendered the award of attorney's fees to appellants unjust. However, we conclude, based on the record and the authorities we have reviewed herein, that plaintiffs-appellants cannot prevail on their § 1983 claim. 42 U.S.C. § 1983 is not an appropriate basis for the relief sought by plaintiffs-appellants. Accordingly, we affirm the district court's order denying appellants' request for costs and attorney's fees filed pursuant to 42 U.S.C. § 1988.

AFFIRMED.

APPENDIX A

ORDINANCE NO. 339

AN ORDINANCE REGULATING THE FLIGHT OF ULTRALIGHT AIRCRAFT IN THE TOWN OF ERIE.

WHEREAS, the number of ultralight vehicles taking off from and/or landing within the boundaries of Erie has increased dramatically in recent years; and

WHEREAS, several ultralight vehicles have both collided with and nearly collided with elevated power lines within the Town limits, causing great danger to both the operators and those immediately below; and

WHEREAS, Federal Rules and Regulations do not require ultralight vehicles and their component parts and equipment to meet the airworthiness certification standards specified for aircraft, or to have certificates of airworthiness; and

WHEREAS, Federal Rules and Regulations do not require operators of ultralight vehicles to meet aeronautical knowledge, age, or experience requirements to operate those vehicles or to have airman or medical certificates; and

WHEREAS, Federal Rules and Regulations do not require ultralight vehicles to be registered or to bear markings of any type; and

WHEREAS, the health, safety, and welfare of the citizens and inhabitants of Erie are not adequately protected by the Federal Rules and Regulations regarding ultralight vehicles and, as a valid exercise of its police powers in an area not pre-empted by federal law, rules, or regulations,

BE IT ORDAINED BY THE BOARD OF TRUSTEES OF THE TOWN OF ERIE, COLORADO, AS FOLLOWS:

Section 1. Repeal: Ordinance No. 338 is hereby repealed.

Section 2. Definition: For the purposes of this Ordinance, an ultralight vehicle is a vehicle that:

a. Is used or intended to be used for manned operation in the air by a single occupant;

b. Is used or intended to be used for recreation or sport purposes only; and

c. Does not have any U.S. or foreign government airworthiness certificate.

Section 3. Aircraft Permitted to Take-off and Land: It shall be unlawful for any person to take-off from or land an ultralight vehicle within the Town of Erie.

Section 4. Violations: Any person, partnership, corporation, or other legal entity violating any of the provisions of this Ordinance shall, upon conviction thereof, be punished by a fine of not more than Three Hundred Dollars ($300.00) and/or imprisonment for not more than ninety (90) days, or any combination of such fine and imprisonment.

Section 5. Safety: This Ordinance is deemed necessary for the protection of the health, safety, and welfare of the community.

Section 6. Revocation: All Ordinances of the Town of Erie, Colorado, heretofore adopted which are in conflict with this Ordinance are hereby repealed.

Section 7. <u>Severability</u>: Should any section, clause, or provision of this Ordinance be declared to be invalid or unconstitutional, such decision shall not affect the validity or constitutionality of the remaining sections of this Ordinance.

INTRODUCED this ____ day of _____, 1983.

PASSED AND ADOPTED this ____ day of _____, 1983.

TOWN OF ERIE

_____
Mayor

ATTEST:

_____
Town Clerk

McKay, Circuit Judge, concurred in part, dissented in part, and filed an opinion.