802 F.2d 459
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ray SMITH, Individually And On Behalf Of Others Similarly
Situated, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION and United Automobile Workers of
America, International and Local 235, Defendants-Appellees.
 Nos. 83-1528, 84-1322.
 United States Court of Appeals, Sixth Circuit.
 Aug. 8, 1986.
 
 Before KEITH and BOGGS, Circuit Judges, and CELEBREEZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff-Appellant, Ray Smith, individually and on behalf of others similarly situated, appeals from the the district court's "dismissal with prejudice" of his claims of racial discrimination against General Motors Corporation[1] brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Sec. 1981. Plaintiff also appeals the lower court's denial of attorney's fees. For the reasons set forth below, we affirm the district court's decisions.
 
 
 2
 Plaintiff commenced this class action on July 18, 1975, alleging that defendants had engaged in a pattern and practice of racial discrimination in terminating the employment of black employees under the terms of a Collective Bargaining Agreement. On April 30, 1982, the district court issued a Memorandum Opinion concluding that "[o]n the basis of evidence that has been presented to the court, the claims of the plaintiffs against defendants, GM, UAW, and/or Local 235 ... must be dismissed with prejudice." On May 24, 1982, the district court entered a judgment in favor of defendants and against both plaintiff and the class he represented.
 
 
 3
 The key issue below was whether plaintiff and the class were discriminated against on the basis of race by operation of paragraph 64(c) and (d) of the Collective Bargaining Agreement. Paragraph 64(c) and (d) provides:
 
 
 4
 Seniority shall be broken for the following reasons:
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 (c) If the employee is absent for three working days without properly notifying the Management, unless a satisfactory reason is given. After the unreported absence of three working days, Management will send written notification to the employee's last known address as shown on the Company's records, that his seniority has been broken and that it can be reinstated if, within three specified working days thereafter, he reports for work or properly notifies Management of his absence. A copy of such management notification will be furnished promptly to the Chairman of the Shop Committee. If the employee complies with the conditions set forth in the notification, his seniority will be reinstated if it has not otherwise been broken; however, such reinstatement shall not be construed as limiting the application to his case of the Shop Rule regarding absence without reasonable cause.
 
 
 8
 (d) If the employee fails to return to work within three working days after being notified to report for work, and does not give a satisfactory reason. A copy of Management's notification of such loss of seniority will be furnished promptly to the Chairman of the Shop Committee.
 
 
 9
 The district court found that total release rates for blacks and whites closely approximated the racial composition of the plant, but found there was a statistically significant difference between release rates for blacks and whites under paragraph 64(c) and (d).
 
 
 10
 The district court correctly concluded that plaintiff could not have prevailed under either a disparate treatment or disparate impact theory of racial discrimination. In our view, Paragraphs 64(c) and (d) were racially neutral on its face. Moreover, GM was not shown to have discriminatory intent in its hiring practice. On the contrary, in 1972, although GM released 135 black employees, that same year they hired 509 new black employees. Furthermore, plaintiff's statistical expert, Dr. Diane Warshay, conceded that the black/white disparity in release rates could be explained by many non-discriminatory factors such as higher rates of 1) absenteeism; 2) layoff among the disproportionately black production (unskilled) workforce segment; and, 3) failure to call in during the initial three-day period.
 
 
 11
 Plaintiff's disparate impact theory under Title VII is also without merit. Defendant has successfully shown that its Paragraph 64 release policy is based upon business necessity. Chrisner v. Complete Auto Trans., Inc., 645 F.2d 1251 (6th Cir.1981). Specifically, Paragraphs 64(c) and (d) allowed GM to 1) remain aware of the composition of its workforce; 2) keep the seniority list current by removing those individuals who had abandoned an interest in maintaining their employment relationship with the Company; and, 3) provide the employees with a protection against an accidental severance of their seniority and employment. The fact that Paragraphs 64(c) and (d) may not have had the lease discriminatory impact, does not vitiate defendant GM's defense: "In disparate impact cases, a Title VII defendant does not bear the burden of showing that its practice or policy embodies the concept of least discriminating alternative." Chrisner, at 1260.
 
 
 12
 The lower court's denial of attorney's fees must also be affirmed. Plaintiff claims they are entitled to attorney's fees pursuant to 42 U.S.C. Sec. 1988 claiming they were a "prevailing" party. As evidence of this claim, plaintiff contends that in January 1978, GM revamped 64(c) and (d) procedures and that by 1979, there was virtually no racial disparity in release rates. In Johnston v. Jago, 691 F.2d 283, 286 (6th Cir.1982), this court adopted the two-part test enunciated in Nadeau v. Helgemoe, 581 F.2d 275 (1st Cir. 1978), for the award of attorney's fees: "First, in order to qualify as a 'prevailing party', a plaintiff must demonstrate that his or her lawsuit was causally related to securing the relief obtained. This determination is factual ... Secondly, plaintiff must establish some minimum basis in law for the relief secured." 691 F.2d at 286.
 
 
 13
 Even assuming plaintiff has met the first "test" of Nadeau, we cannot find GM's change was required by law, thereby satisfying the second part of Nadeau. The court below held that GM's "release" policy, as implemented by Paragraph 64, was legal. Therefore, the re-vamped release policy was not required by law; the application of attorney's fees was properly denied.
 
 
 14
 Accordingly, we AFFIRM the decision of the Honorable Julian A. Cook.
 
 
 
 [1]
 On January 29, 1979, plaintiffs agreed to absolve UAW and Local 235 from liability. However, UAW has remained as a nominal party-in-interest, pursuant to Fed. R. Civ. P. 19(a), for the purpose of preserving and protecting the "integrity" of the Collective Bargaining Agreement which is under scrutiny in this case