Dennis J. HASTERT, Harris Fawell, John E. Porter, Philip M. Crane, Henry J. Hyde, and Robert H. Michel, Plaintiffs,

v.

STATE BOARD OF ELECTIONS, John J. Lanigan, Theresa M. Petrone, Richard A. Cowen, Lawrence E. Johnson, David E. Murray, Langdon D. Neal, Wanda L. Rednour, and Hannelore Huisman, Defendants.

Wilfredo NIEVES, Al Johnson, Linda D. Coronado, Bobby Rush, Jesus Garcia, Rev. Willie Barrow, Rafael Boria, Miguel Del Valle, Robert L. Lucas, Leon D. Finney, Jr., Rev. Clay Evans, Joseph Gardner, Luis V. Gutierrez, Regner Suarez, Joseph Berrios, Miguel A. Santiago, Neomi Hernandez, Plaintiffs,

v.

ILLINOIS STATE BOARD OF ELECTION COMMISSIONERS, John J. Lanigan, Theresa M. Petrone, Richard A. Cowen, Hannelore Huisman, Lawrence E. Johnson, David E. Murray, Langdon D. Neal, and Wanda L. Rednour, Defendants.

Cardiss COLLINS, Charles Hayes, Rev. Wilbur N. Daniels, Rev. Claude S. Wyatt, Howard B. Brookins, Donald L. Williams, Percy Giles, and Ricky Hendon, Plaintiffs,

v.

STATE BOARD OF ELECTIONS, John J. Lanigan, Theresa M. Petrone, Richard A. Cowen, John P. Dailey, Lawrence E. Johnson, David E. Murray, Langdon D. Neal, and Wanda Rednour, Defendants.

Ann ROSEBROOK, Daryl Barklow, Amiel Cueto, Richard Mark, Jeanelle Norman, Carolyn Toney, Lee Babcock, Raymond Oliver, Barbara Poshard, William Mathews, Gerald Hawkins, and Eva Savala, Plaintiffs,

v.

STATE BOARD OF ELECTIONS, John J. Lanigan, Theresa M. Petrone, Richard A. Cowen, Lawrence E. Johnson, David E. Murray, Langdon D. Neal, Wanda L. Rednour, and Hannelore Huisman, Defendants.

The CHICAGO URBAN LEAGUE, Craig R. Collins, Mark Allen, and Nikolas C. Theodore, Plaintiffs,

v.

STATE BOARD OF ELECTIONS, John J. Lanigan, Theresa M. Petrone, Richard A. Cowen, John P. Dailey, Lawrence E. Johnson, David E. Murray, Langdon D. Neal, and Wanda L. Rednour, Defendants.

Nos. 91 C 4028, 91 C 4154, 91 C 4643, 91 C 4656, 91 C 5472.

United States District Court, N.D. Illinois, E.D.

Jan. 17, 1992.

256

Roger P. Flahaven, James R. Carroll,
Asst. Attys. Gen., Chicago, Ill., for defendants Illinois State Bd. of Elections, et al.

Tyrone C. Fahner, Richard S. Williamson,
Lori E. Lightfoot, George J. Tzanetopoulos,
Mayer, Brown & Platt, Charles Frank Marino, David M. Marino, Chicago, Ill., for
plaintiffs Hastert, et al. in No. 91 C 4028.

Linda Reyna Yanez, Arturo Jauregui,
Mexican American Legal Defense and Educational Fund and Ruben Castillo, Kirkland
& Ellis, Chicago, Ill., for Hispanic plaintiffs
in Nieves, et al. in No. 91 C 4154.

Judson Miner, Jeff Cummings, Davis, Miner, Barnhill & Galland, Chicago, Ill., for African-American plaintiffs in Nieves, et al. in No. 91 C 4154.

James D. Montgomery, Jean Templeton, James D. Montgomery & Associates, Chicago, Ill., for plaintiffs Cardiss Collins, et al. in No. 91 C 4643.

Edward T. Joyce, Paul A. Castiglione, Joyce & Kubasiak, P.C., Chicago, Ill., for plaintiffs Rosebrook, et al. in No. 91 C 4656.

Mark S. Grotefeld, Mark Emil Leipold, Robins, Kaplan, Miller & Ceresi, Chicago, Ill., for plaintiffs Chicago Urban League, et al. in No. 91 C 5472.

Nathaniel R. Howse, Howse & Howse and Robert E. Pincham, Jr., Robert E. Pincham, Jr., Ltd., Chicago, Ill., for intervening plaintiff Gus Savage.

R. Eugene Pincham, Chicago, Ill., for intervening plaintiffs Harold Washington Party, et al.

Leonard Amari, Amari & Locallo, Chicago, Ill., for intervening plaintiff Frank Annunzio.

James D. Adducci, Michael C. Dorg, Michael F. Braun, Schuyler, Roche & Zwirner, Chicago, Ill., for intervening plaintiff Sidney R. Yates.

Margaret Daley, Richard A. Devine, Pope & John, Ltd., Chicago, Ill., for intervening plaintiff Michael Zalewski.

Joseph A. Cari, Jr., Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for intervening plaintiff Alvin L. Winkler.

Anton R. Valukis, Jeffrey D. Colman, Thomas D. O'Neill, Jenner & Block, Chicago, Ill., and Clyde L. Kuehn, Kuehn & Trentman, Belleville, Ill., for intervening plaintiffs Johnny Scott and Ben Howard.

Harvey M. Grossman, Roger Baldwin Foundation of A.C.L.U., Inc. and William T. Barker, Sonnenschein Nath & Rosenthal, Chicago, Ill., amicus curiae for A.C.L.U.

Before KANNE, Circuit Judge, NORGLE, District Judge, and CONLON, District Judge.

## MEMORANDUM OPINION AND ORDER

PER CURIAM.

Various plaintiffs and intervenors in this consolidated action regarding the remapping of Illinois congressional districts following the 1990 census now move pursuant to Fed.R.Civ.P. 59(e) to modify judgment to permit the awarding of attorneys' fees and costs under 42 U.S.C. §§ 1973*l*(e) and 1988.

## BACKGROUND

On November 7, 1991, final judgment was entered in these consolidated cases. *Hastert v. State Board of Elections*, 777 F.Supp. 634 (N.D.Ill.1991). Judgment was entered in favor of the *Hastert, Nieves, Collins, Rosebrook,* and *Chicago Urban League* plaintiffs to the extent those parties requested that the then-existing Illinois congressional district plan be declared null and void. *Id.* at 661. Although each of the parties named the Illinois State Board of Elections and its members as the sole defendants in the separately filed actions, the Board did not possess the authority to provide plaintiffs with the relief they sought. Additionally, the Board did not dispute plaintiffs' contentions that population changes represented in the 1990 census rendered unconstitutional the existing congressional district plan implemented by federal court order following the 1980 census. *See In re Congressional Dist. Reapportionment Cases*, No. 81 C 3915, slip op. (N.D.Ill. Nov. 23, 1981). However, because the Board of Elections remained bound to implement the terms of the federal court order that had created the outmoded congressional district plan, the Board remained a necessary party to the present actions. The Board thus served only as a nominal party and played no active role in the proceedings.

The adversarial circumstances requiring trial before this three-judge district court panel arose solely from competing redistricting plans submitted by the plaintiffs themselves. Thus, this court served as the arena for the principally legislative task of redrawing Illinois' congressional districts.

Only two statewide redistricting plans, the so-called *Hastert* and *Rosebrook* plans, were placed in evidence before the court during the two-day trial held in early October 1991. The court ultimately ordered the adoption of the *Hastert* plan to govern Illinois congressional elections until Illinois congressional districts are otherwise reapportioned in accordance with law. *Hastert*, at 662. The court also directed that "all parties to these consolidated cases shall bear their own costs." November 6, 1991 Memorandum Opinion and Order at 66.

On November 20, 1991, the *Hastert*, *Nieves* and *Chicago Urban League* plaintiffs and Scott intervenors moved pursuant to Fed.R.Civ.P. 59(e) to modify the judgment and requested that the court award them fees and costs as prevailing parties under 42 U.S.C. §§ 1973*l*(e) and 1988. The *Collins* plaintiffs filed a similar motion on November 21, 1991. On November 27, 1991, the *Harold Washington Party/Savage* intervenors separately moved to become additional parties to the *Hastert* motion to modify judgment.

## DISCUSSION

■ Various plaintiffs and intervenors move pursuant to Fed.R.Civ.P. 59(e) to amend the November 7, 1991 judgment of the court to permit the award of attorney's fees under 42 U.S.C. §§ 1973*l*(e) and 1988. Ordinarily, a request for fees is a collateral issue to the main cause of action. *See White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982). However, this court's express order directing the parties to bear their own costs means that plaintiffs' requests for fees necessarily constitute a Rule 59(e) motion to alter or amend judgment. To be valid, a Rule 59(e) motion must be served "not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). The *Harold Washington Party/Savage* intervenors moved to join the present Rule 59(e) motions on the thirteenth working day, exclusive of week-

ends and holidays, after entry of judgment. Accordingly, the motion of the *Harold Washington Party/Savage* plaintiffs is denied as untimely. The court does have jurisdiction over the timely-filed Rule 59(e) motions of the remaining moving plaintiffs.

Under 42 U.S.C. § 1973*l*(e), a court "in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of costs" in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." 42 U.S.C. § 1973*l*(e). Under 42 U.S.C. § 1988, which was patterned in part upon the fee provision contained in § 1973*l*(e), *see Hanrahan v. Hampton*, 446 U.S. 754, 758, n. 4, 100 S.Ct. 1987, 1989, n. 4, 64 L.Ed.2d 670 (1980), a court may permit a similar award to a "prevailing party" in a suit to enforce the provisions of 42 U.S.C. § 1983. 42 U.S.C. § 1988. In enacting both of these statutes, Congress directed that prevailing parties "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." S.Rep. 925, 94th Cong., 1st Sess. 40 (1975), *reprinted in* 1975 U.S.Code Cong. & Admin.News 774, 807 (citation omitted) (addressing § 1973*l*(e)) ("S.Rep. 925"); S.Rep. 1011, 94th Cong., 2d Sess. 4 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5912 (citation omitted) addressing § 1988) ("S.Rep. 1101"). *See also Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (citation omitted).[1]

■ The first question to be answered in considering plaintiffs' motions is whether the various movants are prevailing parties within the meaning of the fee statutes. " '[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939, quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978). All of the mov-

---

**1.** Because §§ 1973*l*(e) and 1988 contain nearly identical language and are driven by similar congressional purposes, courts construe the two statutes similarly. *See e.g., Kirksey v. Danks,* 608 F.Supp. 1448, 1452 (S.D.Miss.1985); *cf. Hensley v. Eckerhart,* 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7.

ants contend that they prevailed on what they characterize as the significant issue of the unconstitutionality of the 1981 congressional districting plan due to population changes reflected in the 1990 census.

The moving plaintiffs are correct only in the technical sense that this court declared the previous congressional districts null and void. However, the issue of the constitutionality of the previous congressional districts was never in dispute. Indeed, after filing their respective complaints, none of the plaintiffs offered more than a passing reference to this subject; the unconstitutionality of the 1981 plan was dispensed with in a perfunctory footnote in the court's memorandum opinion. See Hastert, at 641 n. 7. Fee claims cannot be reasonably justified on this basis. Thus, we turn to the various alternative arguments offered by the respective plaintiffs.

The principal issue in litigation during these proceedings involved the determination of which proposed plan for the entire State of Illinois best met constitutional and statutory criteria. All parties agreed that the new congressional district map should contain four minority districts—one Hispanic and three African–American super-majority districts. However, no prior Illinois congressional district map had contained an Hispanic super-majority congressional district. The creation of a super-majority district for the Hispanic "language minority" community residing in the Chicago area therefore required special consideration despite the agreement among the parties. Thus, the determination of an Hispanic super-majority district is also properly viewed as a significant issue in litigation.

■ The *Collins* plaintiffs assert prevailing party status in part because the configuration of the First and Seventh Congressional Districts contained in the *Hastert* plan adopted by the court closely approximated the configuration of those same districts advanced by the *Collins* plaintiffs. This assertion entirely disregards the fact that the *Collins* plaintiffs ultimately adopted the *losing* plan advanced by the *Rosebrook* plaintiffs. Moreover, the *Col-*

*lins* plaintiffs devoted their efforts at trial exclusively to the issue of the placement of the small geographical area comprising Chicago's Second Ward. Not only were the *Collins* plaintiffs' arguments on this issue ultimately rejected, but they also were found to be tangential to the proper scope of the court's inquiry. *Hastert*, at 662. The *Collins* plaintiffs therefore do not constitute a "prevailing party" for the purposes of §§ 1973*l*(e) and 1988.

■ The *Scott* intervenors introduced themselves to these proceedings on September 30, 1991, just over a week before trial, for the limited purpose of addressing the configuration of a relatively small geographic area in the vicinity of East St. Louis, Illinois, contained in one of the pre-trial *Hastert* plans. The *Scott* intervenors had barely finished introducing themselves to these proceedings when they stated at the October 3, 1991 pre-trial conference that they had reached an accommodation with the *Hastert* plaintiffs. The *Scott* intervenors further stated that they would neither participate in these subsequent proceedings nor would they formally endorse or object to the plans to be offered in evidence at trial. Placed in the context of arduous and complicated expedited proceedings conducted to review only redistricting plans for the entire state, the *Scott* intervenors' fleeting presence to address their concerns regarding a tiny fraction of the state, their neutral stance regarding the merits of the principal issue to be litigated and their absence from the trial proceedings compel the conclusion that they do not constitute a statutory "prevailing party" with respect to a "significant issue in litigation." *Hensley* 461 U.S. at 433, 103 S.Ct. at 1939.

■ The *Chicago Urban League* plaintiffs, like the *Collins* plaintiffs and *Scott* intervenors, focused their attention on a small portion of the state. In addition to seeking the perfunctory declaration voiding and nullifying the 1981 congressional districts, the *Chicago Urban League* plaintiffs sought implementation of their own proposed plan for the four minority districts. The *Chicago Urban League* plan

closely tracked the *Hastert* configuration of the minority districts. However, similarities to the final *Hastert* plan notwithstanding, the *Chicago Urban League* plaintiffs chose to proceed on the basis of their own separate map. Moreover, the *Chicago Urban League* did not address the merits of their proposal within the larger context of the adoption of a new state-wide plan, the principal issue before the court. Thus, although the court characterized the *Chicago Urban League* map as effectively adopting the *Hastert* configuration of certain African–American super-majority districts, *see Hastert*, at 660, the court did not adopt the separate *Chicago Urban League* plan. Therefore, the *Chicago Urban League* plaintiffs are not a "prevailing party" on any significant issue.

■ The remaining movants, the *Hastert* and *Nieves* plaintiffs, are "prevailing parties" for purposes of §§ 1973*l*(e) and 1988. This court ultimately adopted the congressional district plan submitted by the *Hastert* plaintiffs. The *Nieves* plaintiffs formally adopted the *Hastert* plan and clearly played a critical role in its development. Indeed, the pre-trial activities of both the *Hastert* and *Rosebrook* plaintiffs involved attempts to satisfy the *Nieves* plaintiffs' goal of establishing Illinois' first Hispanic super-majority district. Additionally, the *Nieves* plaintiffs provided the only truly substantive evidence and legal analysis regarding the establishment of an Hispanic super-majority district. Thus, the adoption of the *Hastert* plan rendered both the *Hastert* and *Nieves* plaintiffs prevailing parties on the significant issues in litigation.

■ As noted above, prevailing parties should ordinarily recover fees except where "special circumstances" would render a fee award "unjust." *Hensley*, 461 U.S. at 429, 103 S.Ct. at 1937. Two factors have been considered in determining "if a case involves 'special circumstances' that would make an award 'unjust': (1) whether allowing attorney's fees in a particular case would further the congressional purpose in adopting the [fee] Acts, and (2) the balance of the equities." *Seattle School Dist. v. Washington*, 633 F.2d 1338, 1348 (9th Cir.

1980) (citations omitted), *aff'd*, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982).

■ The principal congressional purpose behind the enactment of the attorneys' fees provision of §§ 1973*l*(e) and 1988 is reflected in Congress' observation that "[i]n many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer." S.Rep. 1011 at 2, *reprinted in* 1976 U.S.Code Cong. & Admin.News at 5910; *see also* S.Rep. 925 at 43 & n. 47, *reprinted in* 1975 U.S.Code Cong. & Admin.News at 809–10. As a result, fee awards are often "an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies" embodied in civil rights legislation. *Id.; see also* S.Rep. 925 at 41, *reprinted in* 1975 U.S.Code Cong. & Admin.News at 808. Congress' primary purpose in providing attorney's fees in civil rights litigation, therefore, was "to eliminate financial barriers to the vindication of constitutional rights" and thereby "stimulate voluntary compliance with the law." *Seattle School Dist.*, 633 F.2d at 1348 (citation omitted). Awarding fees to the *Hastert* and *Nieves* plaintiffs would not advance this congressional purpose.

The *Hastert* plaintiffs collectively comprise the entire Republican Party contingent of the current Illinois congressional delegation. The *Nieves* plaintiffs include in their ranks two Chicago aldermen, an Illinois state senator and other community leaders. Plaintiffs therefore do not appear to be drawn from the ranks of the disempowered and financially disadvantaged citizenry that Congress had in mind when enacting §§ 1973*l*(e) and 1988. The same observation applies to various other plaintiffs in these consolidated proceedings. For instance, the principal *Collins* plaintiffs are two Democratic Party members of the Illinois congressional delegation. Additionally, it appeared that the *Rosebrook* plaintiffs acted as nominal plaintiffs on behalf of the Democratic Party and various other Democratic members of the current Illinois congressional delegation.

The identity of the plaintiffs in this consolidated action, particularly the principal plaintiffs, suggests that plaintiffs merely shifted the legislative lobbying process that typically attends congressional redistricting to a federal judicial arena. To the extent this move was necessary, blame must be traced in part to the unwillingness of many of the parties to this action, in addition to their state legislative counterparts, to grapple with the issue of congressional redistricting in its intended arena, the state legislature. The present action did not involve a review of the constitutionality of a state-endorsed plan. Instead, the real issues in dispute involved arguments over how Illinois' congressional district lines should be drawn. That issue often involved parochial interests and partisan political concerns that are typically legislative matters.

Plaintiffs would have had to bear their own costs had they fully pursued the redistricting process in the state legislature. It would be inequitable to shift the burden of bearing the costs for plaintiffs' lobbying efforts to the State of Illinois *and thus the taxpayers* merely because the parties moved the pursuit of their political interests to a federal court under the civil rights laws. Accordingly, the balance of equities presents special circumstances warranting a denial of a fee award.

These observations are not meant to detract from the admirable efforts undertaken by the various plaintiffs once the issue of congressional redistricting was moved to this forum. We merely point out the consequences of the Illinois legislature's failure to formulate congressional redistricting plans over the years. *See Hastert,* at 641 & n. 6. The admirable work of the parties in the present action more appropriately should have been carried out in the halls of the state legislature. The prevailing parties should not now receive a fee award for expenses that they would not have been able to recoup had they resolved their differences in the legislative forum.

One final administrative matter requires our attention. On July 31, 1991, the court ordered the immediate publication of notice of these proceedings in daily news-papers around the State of Illinois. The published notice invited participation by any interested group or individual. At the time the court issued its order, the *Hastert* and *Nieves* actions had been filed and consolidated. The *Rosebrook* and *Collins* plaintiffs had filed their separate related actions, with consolidation following soon after. To achieve immediate compliance with the court's notice order, the *Hastert* plaintiffs undertook the administrative and financial burden of publishing the required notice. The *Hastert* plaintiffs now seek partial reimbursement for the costs of the necessary courtesy it extended to the other plaintiffs. The costs of the required notice should be divided equally among the *Hastert, Nieves, Rosebrook* and *Collins* parties. Publication of notice was ordered to advance the disposition of the claims of these plaintiffs who had filed the only claims at the time notice of publication was ordered.

CONCLUSION

Plaintiffs' Fed.R.Civ.P. 59(e) motions to amend or alter judgment to permit an award of attorney's fees is denied. The costs of notice of publication ordered by this court on July 31, 1991 shall be divided equally among the *Hastert, Nieves, Rosebrook* and *Collins* plaintiffs.